[No. D027274. Fourth Dist., Div. One. Apr. 6, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
ADRIAN PAUL SMITH, Defendant and Appellant.

## COUNSEL

Michael J. McCabe for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez and Maxine P. Cutler, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McINTYRE, J.**—Adrian Paul Smith appeals a judgment convicting him of second degree murder. He contends that his conviction must be reversed because (1) the underlying crime relied on by the prosecution (extortion) will not support the application of the felony-murder rule and thus the trial court erred in instructing the jury regarding second degree felony murder; (2) there was insufficient evidence to establish that he committed extortion; and (3) his due process rights were denied because the prosecution did not give him notice that it was pursuing a felony-murder theory until after the close of evidence. Alternatively, he argues that the procedure circumscribed by *People* v. *Patterson* (1989) 49 Cal.3d 615 [262 Cal.Rptr. 195, 778 P.2d 549] (*Patterson*) for determining whether a particular felony qualifies as a basis for application of the felony-murder rule is unconstitutional.

We agree that extortion is not an "inherently dangerous" crime, as necessary to support a felony-murder theory. We reverse the judgment of conviction on this basis and do not reach Smith's remaining contentions.[1]

---

[1]We would normally reach Smith's argument that the evidence was insufficient to support his guilt of extortion, for purposes of assessing whether double jeopardy would preclude his retrial. (See *Burks* v. *United States* (1978) 437 U.S. 1, 11 [98 S.Ct. 2141, 2147, 57 L.Ed.2d 1].) However, because we conclude that extortion does not provide a legal basis for felony murder, Smith clearly cannot be retried on that theory. Although we reverse the conviction based on the trial court's error in instructing the jury on a felony-murder theory, double jeopardy principles do not bar retrial on the prosecution's alternate theories of guilt for second degree murder. (*Id.* at pp. 14-16 [98 S.Ct. at pp. 2148-2150]; *Lockhart* v. *Nelson* (1988) 488 U.S. 33, 40-42 [109 S.Ct. 285, 290-292, 102 L.Ed.2d 265].) Because the jury implicitly found the evidence insufficient to support a first degree murder charge, however, double jeopardy

## Factual and Procedural Background

On December 15, 1995, Smith fatally shot Val Robinson, whom he had known for 20 years. Shortly after the shooting, Smith called 911. He told the operator that Robinson, who he believed had a black belt in karate, had come to his apartment and acted in a threatening way and that he had accidentally shot Robinson. When the police arrived, Smith left the gun, which was fully loaded except for one spent cartridge, on his kitchen table. The officers arrested Smith. The medical examiner conducted an autopsy on Robinson's body, and concluded that a single gunshot to the head was the cause of death and that the gun was from two to twelve inches from Robinson at the time it was fired.

Later that day, Smith waived his constitutional rights and agreed to be interviewed by police. During the interview, he explained that Robinson had come to his apartment at his request, to discuss a $75 debt that Robinson owed him, but had not paid as agreed. Robinson offered to repay $5 of the debt, which Smith refused. Although Smith gave several different statements as to what occurred thereafter, he consistently maintained that he had not intended to shoot Robinson and that the gun went off accidentally.

At trial, the prosecution introduced an audiotape recording of Smith's 911 call and a videotape of Smith's police interview. It also called the deputy medical examiner and a criminologist, as well as various of Robinson's acquaintances, who testified that they were unaware that Robinson was an expert in karate. Smith did not testify or call any witnesses.

The court instructed the jury regarding two theories of first degree murder, three theories of second degree murder, two theories of voluntary man-slaughter and one theory of involuntary manslaughter, as well as allegations of personal use of a dangerous or deadly weapon and personal use of a firearm. The jury convicted Smith of second degree murder and found both personal use allegations to be true. The court sentenced Smith to 19 years to life.

## Discussion

 When an individual causes the death of another in furtherance of the perpetration of a felony, he may be guilty of felony murder as well as the

---

does bar retrial on that charge. (*People v. Serrato* (1973) 9 Cal.3d 753, 760 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144].)

As to Smith's challenges to the procedure set forth in *Patterson,* we note that "[t]he second degree felony-murder doctrine has been a part of California's criminal law for many decades" and despite the defendant's invitation in *Patterson* to invalidate the doctrine, the California Supreme Court declined to do so, indicating that this is a matter more appropriately left to the Legislature. (*Patterson, supra,* 49 Cal.3d at pp. 621-622.)

underlying felony. The felony-murder rule operates to eliminate the need to establish malice, an element of a murder charge, for the person who perpetrates certain felonies, rendering irrelevant whether he acted with actual malice. (*People* v. *Hansen* (1994) 9 Cal.4th 300, 308 [36 Cal.Rptr.2d 609, 885 P.2d 1022].) The purpose of the rule is to deter those who engage in felonious conduct that involves a significant risk of injury or death to others from killing others accidentally. (*Ibid.*)

■ The second degree felony-murder doctrine, which is judicially defined, applies only where the underlying felony is "inherently dangerous to human life." (*People* v. *Burroughs* (1984) 35 Cal.3d 824, 829 [201 Cal.Rptr. 319, 678 P.2d 894], citing *People* v. *Ford* (1964) 60 Cal.2d 772, 795 [36 Cal.Rptr. 620, 388 P.2d 892].) To qualify as "inherently dangerous to human life," the offense must involve "a high probability" of death. (*Patterson, supra*, 49 Cal.3d at p. 627.)

■ In determining whether a particular felony is inherently dangerous, a court must "look to the elements of the felony in the abstract, not the particular 'facts' of the case." (*People* v. *Williams* (1965) 63 Cal.2d 452, 458, fn. 5 [47 Cal.Rptr. 7, 406 P.2d 647].) The court must first examine the primary element of the underlying offense, if any, and then the factors that elevate the offense to a felony. (*People* v. *Henderson* (1977) 19 Cal.3d 86, 94 [137 Cal.Rptr. 1, 560 P.2d 1180]; cf. *Patterson, supra*, 49 Cal.3d at p. 624 [finding Health & Saf. Code, § 11352 as lacking in any primary element].) In so doing, it must consider the statutory definition of the offense as a whole, taking into account nonhazardous, as well as hazardous, ways of committing the offense. (*People* v. *Satchell* (1971) 6 Cal.3d 28, 40 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383].)

The primary element of extortion is "the obtaining of property from another, with his consent, . . . by a wrongful use of force or fear, or under color of official right." (Pen. Code, § 518.) The factors that raise extortion to the level of a felony are the use of force or a threat creating fear. (Pen. Code, § 520.) For this purpose, "fear" is defined as that resulting from a threat to: (1) do unlawful injury to the person or property of any person; (2) accuse the victim, or any of his relatives, of a crime; (3) expose, or impute to, him or them, any deformity, disgrace or crime; or (4) to expose any secret affecting him or them. (Pen. Code, § 519, subds. 1-4.) Most of this conduct is clearly not life threatening. For example, accusing the victim of a crime or exposing a secret about him does not involve "a high probability" that death will result therefrom.

The People admit this problem, but argue that, based on the "qualitative difference" between the fear element as defined in Penal Code section 519,

subdivision 1, and those identified in subdivisions 2 through 4, we should look only to the former in determining if extortion qualifies as an inherently dangerous felony. We reject this argument for a number of reasons. First, subdivision 1 includes fear arising from a threat of injury to property, which clearly does not involve a high probability of death. Second, this argument is contrary to the law, which requires us to look at the entire statutory definition of the crime to determine whether the crime is inherently dangerous.[2] (*People* v. *Satchell, supra,* 6 Cal.3d at p. 40.)

The People also suggest that the application of the second degree felony-murder rule is in any event appropriate because the extortion resulted from Smith's use of a firearm. In doing so, however, the People ask us to focus on the facts of this particular case rather than the elements of extortion in the abstract. This we cannot do. (*Patterson, supra,* 49 Cal.3d at p. 621; *People* v. *Williams, supra,* 63 Cal.2d at p. 458, fn. 5.) ▬ Because review of the elements of the crime leads to the inevitable conclusion that it is not an inherently dangerous felony, extortion will not support application of the second degree felony-murder rule.

Finally, the People contend that, even if extortion is not inherently dangerous, the error in instructing the jury on second degree felony murder does not require reversal of the conviction. Given the nature of the error, we must reverse the conviction unless it is beyond a reasonable doubt that the error did not contribute to the jury's verdict. (*People* v. *Swain* (1996) 12 Cal.4th 593, 607 [49 Cal.Rptr.2d 390, 909 P.2d 994], citing *Chapman* v. *California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].) Such a reasonable doubt arises where, although the jury was instructed on alternate theories, there is no basis in the record for concluding that the verdict was based on a valid ground. (*People* v. *Guiton* (1993) 4 Cal.4th 1116, 1121-1122, 1126-1129 [17 Cal.Rptr.2d 365, 847 P.2d 45], applying *People* v. *Green* (1980) 27 Cal.3d 1, 62-74 [164 Cal.Rptr. 1, 609 P.2d 468].)

The People contend that, based on the jury's finding that Smith personally used a firearm/deadly weapon, we can determine that it did not rely on the second degree felony-murder theory, but rather found that Smith acted with express or implied malice. Malice is express where "there is manifested a deliberate intention unlawfully to take away the life of a fellow creature."

---

[2]The only recognized exception to this rule exists where a particular statute identifies a variety of offenses that lack any common primary element, in which case the court may separate out a particular type of proscribed conduct in determining whether it is inherently dangerous. (*Patterson, supra,* 49 Cal.3d at pp. 623-625.) Because the various types of conduct constituting extortion have a common primary element, this exception does not apply here.

(Pen. Code, § 188.) ▉ Implied malice exists "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Ibid.*) Implied malice is evidenced by a " 'premeditated intent to kill, the killing proximately resulted from an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " (*People v. Phillips* (1966) 64 Cal.2d 574, 587 [51 Cal.Rptr. 225, 414 P.2d 353].)

While we agree that the evidence presented at trial would have been sufficient to support a finding of express or implied malice (see *People* v. *Nieto Benitez* (1992) 4 Cal.4th 91, 105-108 [13 Cal.Rptr.2d 864, 840 P.2d 969]), we disagree that the jury must have made such a finding on the evidence presented. Smith told the 911 operator that Robinson, a black belt in karate, approached him in a threatening way, that he was "trying to contain" Robinson and that he had to "shoot [Robinson]." He also stated, "I can't believe he came here . . . and did this to me" and that the situation was "very terrible." Although he gave somewhat conflicting statements to the police during his interview, he was consistent that the shooting was accidental. Based on the evidence, it would be mere speculation for us to conclude that the jury must have found express or implied malice. Further, the possibility of prejudice is heightened in this case based on the court's instruction that the jury need not reach unanimous agreement as to the theory on which a conviction of second degree murder could be based.

▉ Since the prosecution argued three different theories to support a second degree murder conviction, including the erroneous theory of felony murder, and we cannot discern from the record which theory provided the basis for the jury's determination of guilt, the conviction cannot stand. (*People* v. *Green, supra,* 27 Cal.3d at p. 69.)

### DISPOSITION

The judgment is reversed and the matter is remanded for a new trial.

Work, Acting P. J., and Huffman, J., concurred.