[No. S108353. Jan. 27, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
EVERT KEITH HOWARD, Defendant and Appellant.

**COUNSEL**

Madeline McDowell, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, W. Scott Thorpe, Janet E. Neeley, John G. McLean and Sharon E. Loughner, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KENNARD, J.**—Murder is the unlawful killing of a human being, with malice aforethought. (Pen. Code, § 187, subd. (a).) But under the second degree felony-murder rule, the prosecution can obtain a conviction without showing malice if the killing occurred during the commission of an inherently dangerous felony. Is the crime of driving with a willful or wanton disregard for the safety of persons or property while fleeing from a pursuing police officer (Veh. Code, § 2800.2)[1] an inherently dangerous felony for purposes of the second degree felony-murder rule? We conclude it is not.

## I

At 12:40 a.m. on May 23, 2002, California Highway Patrol Officer Gary Stephany saw defendant driving a Chevrolet Tahoe (a sport utility vehicle) without a rear license plate, and signaled him to pull over. Defendant stopped on the side of the road. But when Officer Stephany and his partner, Officer Wayne Bernard, got out of their patrol car, defendant restarted the engine and sped to a nearby freeway. The officers gave chase at speeds of up to 90 miles per hour and radioed for assistance. Defendant left the freeway and drove onto a surface street, turning off his car's headlights. He ran two stop signs and a red light, and he drove on the wrong side of the road. His speed was 15 to 20 miles over the posted speed limit of 50 miles per hour. At some point, he made a sharp turn onto a small dirt road and escaped.

Minutes later, Officer Anthony Arcelus and his partner, Officer Bret Boss, who had been monitoring the pursuit on their car radio, saw the Tahoe with its headlights on again and took up the chase. Officer Arcelus, who was driving, estimated the Tahoe's speed at more than 80 miles per hour, and he saw it run a stop sign and a traffic light. By then, the car's headlights were again turned off. Up to that point, the chase had taken place in rural parts of Fresno County. When the Tahoe started heading toward downtown Fresno, Officer Arcelus gave up the pursuit, fearing that the high-speed chase might cause an accident.

About a minute after Officer Arcelus stopped chasing the Tahoe, he saw it run a red light half a mile ahead of him and collide with a car driven by Jeanette Rodriguez. Rodriguez was killed and her husband, a passenger in the car, was seriously injured. It turned out that the Tahoe that defendant was driving had been stolen earlier that day. Defendant, who was also injured in the crash, was arrested and charged with murder (Pen. Code, § 187), with

---

[1] Unless otherwise stated, all further statutory citations are to the Vehicle Code.

causing serious bodily injury while evading a police officer (§ 2800.3), and with evading a police officer in willful or wanton disregard for the safety of persons or property (§ 2800.2).

At trial, the prosecution called as a witness Laurie Bennett, defendant's passenger during the chase. She was evasive about the events leading up to the accident. Ultimately, she admitted that she had told the truth when she explained to a police officer that five or six times during the chase she had begged defendant to let her get out of the car, and that defendant had run a red light at the intersection where the fatal accident occurred. An accident reconstruction expert testified that at the time of the accident the Tahoe was traveling over 80 miles per hour, and Rodriguez's car was traveling close to the posted speed limit of 35 miles per hour. John Mikkelson, a pipeline inspector working near the intersection where the accident occurred, said he looked at the signal immediately after hearing the crash of the two colliding cars and saw that it was green for cars traveling in Rodriguez's direction (and thus presumably red for defendant).

Forensic toxicologist Roger Peterson, a witness for the defense, testified that defendant had a "high amount" of methamphetamine in his bloodstream at the time of the accident. A person under the influence of methamphetamine, Peterson said, might drive at excessive speeds, might have trouble staying in a single lane, and might not notice traffic lights and signs. Defendant also had marijuana in his bloodstream, but not enough to be under the influence. Victim Rodriguez's bloodstream contained morphine (a metabolite of heroin) and benzoyleconine (a metabolite of cocaine). Based on this evidence, toxicologist Peterson expressed his opinion that Rodriguez was under the influence of heroin and possibly cocaine when the accident occurred.

Defendant testified on his own behalf. He admitted stealing the Tahoe and fleeing from the Highway Patrol officers. He did so because his probation officer had told him he would go to prison if he was again caught in a stolen car. He could only remember bits and pieces of the chase. He described himself as a skilled driver; his cousin, a race car driver, had taught him to drive "sprint cars" at a racetrack. He saw the victims' car before the accident but could not recall hitting it. He could not remember what color the signal light was when he entered the intersection but admitted it was "most likely" red when the car he was driving crashed into the Rodriguez car.

The trial court instructed the jury: "Every person who unlawfully kills a human being during the commission of violation of California Vehicle Code section 2800.2, a felony inherently dangerous to human life, is guilty of the crime of murder in violation of Section 187 of the Penal Code. [¶] In order to

prove this crime, each of the following elements must be proved: [¶] 1. A human being was killed; [¶] 2. The killing was unlawful; and [¶] 3. The killing occurred during the commission of violation of California Vehicle Code section 2800.2, a felony inherently dangerous to human life. A violation of Vehicle Code section 2800.2 is a felony inherently dangerous to human life." The trial court did not instruct the jury that malice is an element of murder or that the jury could convict defendant if it found that he acted with express or implied malice when he killed victim Rodriguez.

In his closing argument, defense counsel contended that defendant did not violate section 2800.2 because he did not drive with willful and wanton disregard for life or property; that even if defendant violated section 2800.2 while fleeing from the officers he was not doing so when the accident occurred, because by then the officers were no longer chasing him; and that defendant might not have caused the accident because there was a reasonable doubt that he ran a red light at the time of the incident.

During its deliberations, the jury sent the trial court this note: "It appears in the instructions if there is a guilty verdict in [section] 2800.2 then there must be a guilty verdict for [Penal Code section] 187, yes or no?" The court replied that it was "not in a position to say yes or no"; it then reread the instructions on felony murder and causation. The jury convicted defendant of all counts.

The Court of Appeal affirmed. As pertinent here, it rejected defendant's contention that he could not be convicted under the second degree felony-murder rule because section 2800.2 is not an inherently dangerous felony. And it rejected defendant's contention that he could not be convicted of murder because his conduct fit within section 2800.3 (causing death or serious bodily injury by willful flight from a pursuing peace officer), which he claimed is a "special statute" that bars his conviction for the more general crime of murder.

We granted defendant's petition for review on these two issues: "1. Whether the offense of driving in willful or wanton disregard for the safety of persons or property while fleeing from a pursuing police officer (Veh. Code, § 2800.2) is a felony inherently dangerous to human life for purposes of the second degree felony-murder rule. [¶] 2. Whether the offense of proximately causing death or serious bodily injury by willful flight from a pursuing police officer (Veh. Code, § 2800.3) is a more specific offense precluding application of the second degree felony-murder rule where death occurs during the offense of driving in willful or wanton disregard for the safety of persons or property while fleeing from a pursuing police officer (Veh. Code, § 2800.2)."

## II

 Because the second degree felony-murder rule is a court-made rule, it has no statutory definition. This court has described it thusly: "A homicide that is a direct causal result of the commission of a felony *inherently dangerous to human life* (other than the . . . felonies enumerated in Pen. Code, § 189) constitutes at least second degree murder." (*People v. Ford* (1964) 60 Cal.2d 772, 795 [36 Cal.Rptr. 620, 388 P.2d 892], italics added.) The rule "eliminates the need for proof of malice in connection with a charge of murder." (*People v. Robertson* (2004) 34 Cal.4th 156, 165 [17 Cal.Rptr.3d 604, 95 P.3d 872].) It is not an evidentiary presumption but a substantive rule of law (see *People v. Dillon* (1983) 34 Cal.3d 441, 472–476 [194 Cal.Rptr. 390, 668 P.2d 697]; see also *People v. Patterson* (1989) 49 Cal.3d 615, 626 [262 Cal.Rptr. 195, 778 P.2d 549]), which is based on the theory that "when society has declared certain inherently dangerous conduct to be felonious, a defendant should not be allowed to excuse himself by saying he was unaware of the danger to life because, by declaring the conduct to be felonious, society has warned him of the risk involved." (*People v. Patterson, supra*, 49 Cal.3d at p. 626.)

Because the second degree felony-murder rule is "a judge-made doctrine without any express basis in the Penal Code" (*People v. Dillon, supra*, 34 Cal.3d at p. 472, fn. 19), its constitutionality has been questioned (see *People v. Patterson, supra*, 49 Cal.3d at p. 641 (conc. opn. of Panelli, J.)). And, as we have noted in the past, legal scholars have criticized the rule for incorporating "an artificial concept of strict criminal liability that 'erodes the relationship between criminal liability and moral culpability.' " (*Id.* at p. 621.) Therefore, we have repeatedly stressed that the rule " 'deserves no extension beyond its required application.' " (*Id.* at p. 622; see also *People v. Burroughs* (1984) 35 Cal.3d 824, 829 [201 Cal.Rptr. 319, 678 P.2d 894]; *People v. Phillips* (1966) 64 Cal.2d 574, 582 [51 Cal.Rptr. 225, 414 P.2d 353].)

 "In determining whether a felony is inherently dangerous [under the second degree felony-murder rule], the court looks to the elements of the felony *in the abstract*, 'not the "particular" facts of the case,' i.e., not to the defendant's specific conduct." (*People v. Hansen* (1994) 9 Cal.4th 300, 309 [36 Cal.Rptr.2d 609, 885 P.2d 1022].) That is, we determine whether the felony "by its very nature . . . cannot be committed without creating a substantial risk that someone will be killed . . . ." (*People v. Burroughs, supra*, 35 Cal.3d at p. 833; see also *People v. Robertson, supra*, 34 Cal.4th at p. 166.)

Felonies that have been held inherently dangerous to life include shooting at an inhabited dwelling (*People v. Hansen, supra,* 9 Cal.4th at p. 311), poisoning with intent to injure (*People v. Mattison* (1971) 4 Cal.3d 177 [93 Cal.Rptr. 185, 481 P.2d 193]), arson of a motor vehicle (*People v. Nichols* (1970) 3 Cal.3d 150, 163 [89 Cal.Rptr. 721, 474 P.2d 673]; but see *People v. Henderson* (1977) 19 Cal.3d 86, 96 [137 Cal.Rptr. 1, 560 P.2d 1180]), grossly negligent discharge of a firearm (*People v. Clem* (2000) 78 Cal.App.4th 346, 353–354 [92 Cal.Rptr.2d 727]; see also *People v. Robertson, supra,* 34 Cal.4th at pp. 168–169 [quoting *Clem* with approval]), manufacturing meth-amphetamine (*People v. James* (1998) 62 Cal.App.4th 244, 271 [74 Cal.Rptr.2d 7]), kidnapping (*People v. Greenberger* (1997) 58 Cal.App.4th 298, 377 [68 Cal.Rptr.2d 61]; *People v. Pearch* (1991) 229 Cal.App.3d 1282, 1299 [280 Cal.Rptr. 584]), and reckless or malicious possession of a destructive device (*People v. Morse* (1992) 2 Cal.App.4th 620, 646 [3 Cal.Rptr.2d 343]).

Felonies that have been held *not* inherently dangerous to life include practicing medicine without a license under conditions creating a risk of great bodily harm, serious physical or mental illness, or death (*People v. Burroughs, supra,* 35 Cal.3d at p. 833); false imprisonment by violence, menace, fraud, or deceit (*People v. Henderson, supra,* 19 Cal.3d at pp. 92–96); possession of a concealable firearm by a convicted felon (*People v. Satchell* (1971) 6 Cal.3d 28, 35–41 [98 Cal.Rptr. 33, 489 P.2d 1361]); possession of a sawed-off shotgun (*id.* at pp. 41–43); escape (*People v. Lopez* (1971) 6 Cal.3d 45, 51–52 [98 Cal.Rptr. 44, 489 P.2d 1372]); grand theft (*People v. Phillips, supra,* 64 Cal.2d at pp. 580–583); conspiracy to possess methedrine (*People v. Williams* (1965) 63 Cal.2d 452, 458 [47 Cal.Rptr. 7, 406 P.2d 647]); extortion (*People v. Smith* (1998) 62 Cal.App.4th 1233, 1236–1238 [72 Cal.Rptr.2d 918]); furnishing phencyclidine (*People v. Taylor* (1992) 6 Cal.App.4th 1084, 1099 [8 Cal.Rptr.2d 439]); and child endangerment or abuse (*People v. Lee* (1991) 234 Cal.App.3d 1214, 1229 [286 Cal.Rptr. 117]).

## III

In determining whether section 2800.2 is an offense inherently dangerous to life, we begin by reviewing the statutory scheme. Three statutes punish those who flee from police officers: sections 2800.1, 2800.2, and 2800.3.

Section 2800.1 states that any motorist who "with the intent to evade, willfully flees or otherwise attempts to elude" a peace officer pursuing on a motor vehicle or bicycle is, under specified circumstances, guilty of a misdemeanor.

Under section 2800.3, when "willful flight or attempt to elude a pursuing peace officer in violation of Section 2800.1 proximately causes death or serious bodily injury to any person," the offense is a wobbler (an offense that can be a felony or a misdemeanor, at the trial court's discretion), punishable by up to five years in prison.

Section 2800.2, which was the basis for defendant's conviction under the second degree felony-murder rule, provides:

"(a) If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail . . . . The court may also impose a fine . . . or may impose both that imprisonment or confinement and fine.

"(b) For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs."

■ In concluding that section 2800.2 is an inherently dangerous felony, the Court of Appeal relied heavily on *People v. Johnson* (1993) 15 Cal.App.4th 169 [18 Cal.Rptr.2d 650]. There the Court of Appeal, construing an earlier version of section 2800.2 that was essentially the same as what is now subdivision (a) of that section, held that driving with "willful or wanton disregard for the safety of persons or property" was inherently dangerous to life. We need not decide, however, whether *Johnson* was correct, because in 1996, three years after *Johnson* was decided, the Legislature amended section 2800.2 to add subdivision (b). (Stats. 1996, ch. 420, § 1.) Subdivision (b) very broadly defines the term "willful or wanton disregard for the safety of persons or property," as used in subdivision (a), to include *any* flight from an officer during which the motorist commits three traffic violations that are assigned a "point count" under section 12810, or which results in "damage to property."

Violations that are assigned points under section 12810 and can be committed without endangering human life include driving an unregistered vehicle owned by the driver (§§ 40001, 12810, subds. (e), (g)(1)), driving with a suspended license (§§ 14601, 12810, subd. (i)), driving on a highway at slightly more than 55 miles per hour when a higher speed limit has not been posted (§§ 22349, subd. (a), 12810, subd. (e)), failing to come to a

complete stop at a stop sign (§§ 22450, 12810, subd. (e)), and making a right turn without signaling for 100 feet before turning (§§ 22108, 12810, subd. (e)).

The Court of Appeal here rejected defendant's contention that because of the broad definition of the phrase "willful or wanton disregard for the safety of persons or property" in subdivision (b) of section 2800.2, violations of section 2800.2 are not inherently dangerous to life for the purposes of the second degree felony-murder rule. The Court of Appeal quoted *People v. Sewell* (2000) 80 Cal.App.4th 690 [95 Cal.Rptr.2d 600], which concluded that subdivision (b) "did not change the elements of the section 2800.2 offense, in the abstract, or its inherently dangerous nature." (*Sewell*, at p. 694.) But, as we pointed out in the preceding paragraph, subdivision (b) greatly expanded the meaning of the quoted statutory phrase to include conduct that ordinarily would not be considered particularly dangerous.[2]

■ The Attorney General contends that when the Legislature amended section 2800.2 to add subdivision (b), it did not intend to make the second degree felony-murder rule inapplicable to violations of that section. The legislative history of the amendment makes no mention, however, of the second degree felony-murder rule; nor does the legislative history pertaining to the original enactment in 1988 of section 2800.2 (Stats. 1988, ch. 504, § 3, p. 1919). In all likelihood, the Legislature did not consider the effect that *either* the statute's original enactment *or* its amendment would have on murder prosecutions. In the absence of any evidence of legislative intent, we assume that the Legislature contemplated that we would determine the application of the second degree felony-murder rule to violations of section 2800.2 based on our long-established decisions holding that the rule applies only to felonies that are inherently dangerous in the *abstract*. (*People v. Robertson, supra,* 34 Cal.4th at p. 166; *People v. Hansen, supra,* 9 Cal.4th at p. 309; *People v. Phillips, supra,* 64 Cal.2d at p. 582; *People v. Williams, supra,* 63 Cal.2d at p. 458, fn. 5.) As we have explained in this opinion, a violation of section 2800.2 is not, in the abstract, inherently dangerous to

---

[2] Justice Baxter's dissenting opinion stresses that the trial court's instructions to the jury left the phrase "willful or wanton disregard for the safety of persons or property" undefined, and did not mention the Legislature's broad definition of that phrase in subdivision (b) of section 2800.2. (Dis. opn., *post,* at p. 1145.) Thus, the dissent argues, this court should not consider the latter definition in deciding whether section 2800.2 is inherently dangerous. But in determining whether a felony is inherently dangerous, we must consider the law enacted by the Legislature, regardless of the jury instructions in a particular case. The dissent also notes that "although the Legislature elected to include subdivision (b) as part of section 2800.2, it could just have easily have added a separate section, establishing a distinct felonious offense of committing three 'points' violations while driving to elude a peace officer." (Dis. opn., *post,* at p. 1144.) True. But the Legislature did not do so. To determine whether section 2800.2 is inherently dangerous, we must examine the law the Legislature *did* enact, not a hypothetical law the Legislature *could have* enacted.

human life. Therefore, the second degree felony-murder rule does not apply when a killing occurs during a violation of section 2800.2.

Thus, the trial court here erred when it instructed the jury that it should find defendant guilty of second degree murder if it found that, while violating section 2800.2, defendant fatally injured Jeanette Rodriguez when their cars collided.[3] The parties have not briefed the question of whether the trial court's instructional error was prejudicial. That is a matter to be considered by the Court of Appeal on remand.[4]

## CONCLUSION

Nothing here should be read as saying that a motorist who kills an innocent person in a hazardous, high-speed flight from a police officer should *not* be convicted of murder. A jury may well find that the motorist has acted with malice by driving with conscious disregard for the lives of others, and thus is guilty of murder. (See generally *People v. Watson* (1981) 30 Cal.3d 290 [179 Cal.Rptr. 43, 637 P.2d 279].) But, as we have explained, not all violations of section 2800.2 pose a danger to human life. Therefore, the prosecution may not (as it did here) resort to the second degree felony-murder rule to remove from the jury's consideration the question whether a killing that occurred during a violation of section 2800.2 was done with malice.[5]

We reverse the judgment of the Court of Appeal, which upheld defendant's conviction for second degree murder, and remand the matter to that court for further proceedings consistent with this opinion.

George, C. J., Werdegar, J., Chin, J., and Moreno, J., concurred.

---

[3] Defendant asserts that when the Legislature enacted section 2800.3, it created a specific statute that specifies the penalty when flight from a pursuing peace officer results in death or serious bodily injury, thus barring his conviction of the more general crime of second degree murder under the second degree felony-murder rule, based on a violation of section 2800.2. We need not address this contention, because of our conclusion that the second degree felony-murder rule does not apply to violations of section 2800.2.

[4] Justice Baxter's dissenting opinion argues forcefully that the trial court's instructional error was harmless because (1) there was overwhelming evidence that defendant acted with implied malice, and (2) the jury implicitly found, based on the trial court's instructions, that defendant acted with malice. (Dis. opn., *post,* at pp. 1144–1147.) We express no views on Justice Baxter's arguments, which should be considered by the Court of Appeal on remand.

[5] To the extent it is inconsistent with this opinion, we disapprove *People v. Sewell, supra,* 80 Cal.App.4th 690, which held that a murder conviction under the second degree felony-murder rule can be based on a violation of section 2800.2.

**BROWN, J.**, Concurring and Dissenting.—I concur with the majority's holding that defendant's conviction for second degree felony murder must be reversed and the case remanded for further proceedings. However, for the reasons set forth in my dissenting opinion in *People v. Robertson* (2004) 34 Cal.4th 156, 186–192 [17 Cal.Rptr.3d 604, 95 P.3d 872] (dis. opn. of Brown, J.), I cannot countenance the majority's continued allegiance to this dubious doctrine.

Here, defendant was convicted solely on a second degree felony-murder theory. The majority appears to acknowledge the rule is constitutionally and analytically suspect: "Because the second degree felony-murder rule is 'a judge-made doctrine without any express basis in the Penal Code' [citation], its constitutionality has been questioned [citation]. And, as we have noted in the past, legal scholars have criticized the rule for incorporating 'an artificial concept of strict criminal liability that "erodes the relationship between criminal liability and moral culpability." ' [Citation.] Therefore, we have repeatedly stressed that the rule ' "deserves no extension beyond its required application." ' [Citations.]" (Maj. opn., *ante*, at p. 1135.) I agree, but I would go farther and abrogate the rule entirely. (*People v. Robertson, supra*, 34 Cal.4th 156, 191 (dis. opn. of Brown, J.) ["Because the second degree felony-murder rule is suspect I believe it would not be missed if we abandoned it"].) As the facts of this case conclusively demonstrate, the application of the second degree felony-murder rule remains irredeemably arbitrary.

The majority concludes, based on a technical parsing of the provision's grammar, that a violation of Vehicle Code section 2800.2 is not an inherently dangerous felony for purposes of second degree felony murder. However, a commonsense construction of the statute's language leads to the opposite conclusion—a conclusion that is considerably less counterintuitive. As one lower court stated in addressing the same issue we review here, "It would seem clear as a matter of logic that any felony whose key element is 'wanton disregard' for human life necessarily falls within the scope of 'inherently dangerous' felonies. . . . [¶] . . . [¶] . . . [A]part from the 'wanton disregard' element, one must also be engaged in the act of fleeing from a pursuing peace officer whose vehicle is displaying lights and sirens. Any high-speed pursuit is inherently dangerous to the lives of the pursuing police officers. In even the most ethereal of abstractions, it is not possible to imagine that the 'wanton disregard' of the person fleeing does not encompass disregard for the safety of the pursuing officers." (*People v. Johnson* (1993) 15 Cal.App.4th 169, 173–174 [18 Cal.Rptr.2d 650].) Unlike the majority, I find the Court of Appeal's statement in *Johnson* persuasive.

Indeed, I agree with Justice Baxter that if any offense should easily qualify as inherently dangerous, Vehicle Code section 2800.2 certainly would. "Subdivision (a) of section 2800.2 gives clear and specific notice that one who, in order to elude police pursuit, drives with reckless indifference to safety is guilty of a felony. Such reckless driving is, of course, inherently dangerous—by definition, it creates a substantial risk that someone will be killed." (Dis. opn. of Baxter, J., *post*, at p 1143.) Although it is possible to imagine slow motion pursuits where neither people nor property are harmed, the facts of this case present the more likely scenario: defendant greatly exceeded the speed limit, ran stop signs and stoplights, drove the wrong way on a street and entered downtown Fresno, where the pursuing police officer broke off his chase because he determined that it was too dangerous to proceed. Unfortunately, although the police officer avoided injury by breaking off his pursuit, defendant still entered an intersection on a red light and collided with another vehicle, killing its driver.

"[R]easonable judges can disagree about the legitimacy of contracting or expanding the statutory definition of a felony in order to conclude that a particular violation should be deemed inherently dangerous." (*People v. Robertson, supra,* 34 Cal.4th 156, 186 (dis. opn. of Brown, J.).) Two other Court of Appeal decisions have concluded that a violation of Vehicle Code section 2800.2 is an inherently dangerous felony. (*People v. Sewell* (2000) 80 Cal.App.4th 690, 693–697 [95 Cal.Rptr.2d 600]; *People v. Johnson, supra,* 15 Cal.App.4th at pp. 173–174.) In this case, two members of this court and a unanimous Court of Appeal reached the same conclusion. The fact that such variations are not just possible, but actually inevitable, suggests a level of arbitrariness we should make every effort to eliminate from the criminal law. For that reason, as well as other concerns discussed more fully in *Robertson,* I would abrogate the nonstatutory second degree felony-murder rule and leave it to the Legislature to define precisely what conduct subjects a defendant to strict criminal liability.

**BAXTER, J.,** Dissenting.—I respectfully dissent. In early morning darkness, defendant, driving a stolen vehicle, led police officers on a perilous and extended chase over Fresno County roads. He ran three stop signs and a red light, and even proceeded on the wrong side of a divided highway, while operating the vehicle far in excess of posted speed limits. Finally, as he dashed on city streets toward downtown Fresno at speeds between 80 and 90 miles per hour, he ran a second red light and collided with another vehicle. Both occupants of that car were ejected onto the street. One perished.

As a result of his reckless actions, defendant suffered a conviction for violation of Vehicle Code section 2800.2,[1] which makes it a felony to flee police pursuit by driving with "a willful or wanton disregard for the safety of persons or property." (*Id.*, subd. (a).) Because his violation of this law had fatal consequences, defendant was also convicted of second degree murder on a felony-murder theory—i.e., that he caused death in the commission of an inherently dangerous felony. Instructions told the jury that the "willful or wanton disregard" necessary to both convictions required an intentional act performed with a "conscious disregard" for safety.

The majority concede that defendant (1) violated section 2800.2, the reckless flight statute, by "willful[ly] or wanton[ly] disregard[ing]" human safety during a flight from the police, and (2) thereby produced a human fatality. Nonetheless, though two Court of Appeal decisions have concluded otherwise (*People v. Sewell* (2000) 80 Cal.App.4th 690, 693–697 [95 Cal.Rptr.2d 600] (*Sewell*); *People v. Johnson* (1993) 15 Cal.App.4th 169, 173–174 [18 Cal.Rptr.2d 650] (*Johnson*)), the majority insist that this statute cannot support a felony-murder conviction.

The majority invoke the premise that second degree felony murder only occurs in the commission of a felony which is inherently dangerous *in the abstract*—one which, by its very nature, cannot be committed without creating a substantial risk, or a high probability, that someone will be killed. (E.g., *People v. Hansen* (1994) 9 Cal.4th 300, 309 [36 Cal.Rptr.2d 609, 885 P.2d 1022] (*Hansen*).) Relying on the peculiar construction of the reckless flight statute, including its recent amendment, the majority posit that even if defendant violated section 2800.2 in a potentially lethal way, it can be violated without creating a lethal danger to persons.

The majority focus upon subdivision (b) of section 2800.2, which was added in 1996. This subdivision states that "[f]or purposes of [section 2800.2]," driving with "a willful or wanton disregard for the safety of persons or property includes . . . driving . . . during which time . . . three or more [traffic] violations that are assigned a traffic violation point count under [s]ection 12810 occur . . . ." The majority reason that, because some statutory "points" violations are not inherently dangerous, one can commit the unitary felony described in both subdivisions of section 2800.2 in a way that does not place human life at risk.

---

[1] All further unlabeled statutory references are to the Vehicle Code.

I am not persuaded. Subdivision (a) of section 2800.2 gives clear and specific notice that one who, in order to elude police pursuit, drives with reckless indifference to safety is guilty of a felony. Such reckless driving is, of course, inherently dangerous—by definition, it creates a substantial risk that someone will be killed. Moreover, there is no doubt that defendant committed exactly the reckless endangerment of human life forbidden by the statute. As I explain in further detail below, his conviction for violating section 2800.2, as well as his felony-murder conviction, were unambiguously based on the dangerous recklessness of his flight from the police.

Hence, the principal reason noted by the majority for limiting the second degree felony-murder rule should not bar a felony-murder finding here. The statute's express words placed defendant on notice that the particular conduct he was committing—recklessly unsafe driving to elude police pursuit—was both felonious and inherently dangerous, and thus a basis for murder liability if death resulted. This is a case where " 'society has declared certain inherently dangerous conduct to be felonious,' " and " 'defendant should [therefore] not be allowed to excuse himself by saying he was unaware of the danger to life because, by declaring the conduct to be felonious, society has warned him of the risk involved.' " (Maj. opn., *ante*, at p. 1135, quoting *People v. Patterson* (1989) 49 Cal.3d 615, 626 [262 Cal.Rptr. 195, 778 P.2d 549] (*Patterson*).)

Conversely, the principal reason for applying the felony-murder rule is present. The purpose of the felony-murder doctrine " 'is to deter those engaged in felonies from killing negligently or accidentally.' " (*Hansen, supra,* 9 Cal.4th 300, 308, quoting *People v. Satchell* (1971) 6 Cal.3d 28, 43 [98 Cal.Rptr. 33, 489 P.2d 1361].) Because the doctrine absolves the prosecution from proving malice, it properly applies when " 'the killer is engaged in a felony whose inherent danger to human life renders logical an imputation of malice on the part of all who commit it.' " (*Ibid.*)

Those requirements are met here. It is appropriate to deter persons from killing negligently or accidentally—as did defendant—while engaged—as was defendant—in recklessly unsafe driving to elude police pursuit, a specific form of conduct made felonious by section 2800.2, subdivision (a). Moreover, the inherent danger such conduct poses to human life is so clear that it is logical to impute malice to anyone who commits it.

Under such circumstances, it perverts reason to refuse to apply the felony-murder rule simply because subdivision (b) of section 2800.2 may additionally describe a nondangerous felony. Where society has warned, in plain statutory words, that the particular conduct committed by the defendant

is both dangerous and felonious, it should not matter that the statute may forbid nondangerous conduct as well.[2]

It is worth noting that, although the Legislature elected to include subdivision (b) as part of section 2800.2, it could just as easily have added a separate section, establishing a distinct felonious offense of committing three "points" violations while driving to elude a peace officer. This would equally have satisfied the apparent legislative purpose to deter flight from the police by expanding the circumstances under which driving to elude a pursuing police officer would constitute a felony. (See, e.g., Sen. Com. on Crim. Proc., Analysis of Assem. Bill No. 1999 (1995–1996 Reg. Sess.) as amended Apr. 29, 1996, p. 6.)

However, neither the Legislature's desire to create a felony of flight with "points" violations, nor its choice of methodology to accomplish this result, can deprive the reckless conduct described in subdivision (a) of all force as an inherently dangerous felony. If subdivision (a) described an inherently dangerous felony before the addition of subdivision (b) in 1996 (see *Johnson, supra,* 15 Cal.App.4th 169, 173–174), the unchanged words of that subdivision equally do so following the 1996 amendment (see *Sewell, supra,* 80 Cal.App.4th 690, 693–697).

In sum, where the defendant committed inherently dangerous conduct expressly made felonious by subdivision (a) of section 2800.2, and was *accused, tried, and convicted solely under that subdivision,* I submit that subdivision (a) is the provision we should analyze to determine if it qualifies as a basis for felony murder.

As I have indicated above, this is such a case. The prosecution avoided all reliance on subdivision (b) of section 2800.2, and that subdivision was never an issue in the trial below. When referring to section 2800.2, the information cited only the language of subdivision (a), charging that defendant "drove with a willful or wanton disregard for the safety of persons or property." In his testimony, one of the pursuing officers, Gary Stephany, ticked off the numerous Vehicle Code violations defendant had committed during the

---

[2] This court has previously indicated that when a felony statute speaks in the disjunctive, describing discrete dangerous and nondangerous means of commission, the felony cannot be considered "inherently dangerous" for purposes of the second degree felony-murder rule. (*People v. Burroughs* (1984) 35 Cal.3d 824, 830 [201 Cal.Rptr. 319, 678 P.2d 894].) It has also been said that the statute must be examined in isolation from the facts of the case, so as to prevent the unfair possibility that the accused will be deemed to have committed an "inherently dangerous" felony simply because a death resulted. (*Ibid.*) I find these premises questionable where, as here, it is clear that the accused committed a form of the felony which, by its terms, necessarily endangers life, and that his murder conviction is based on the inherently dangerous form of the felony.

high-speed chase, but the import of Stephany's testimony was simply to emphasize defendant's extreme and ongoing recklessness. The prosecutor never asked Stephany, or any other witness, whether defendant committed "points" violations.

In his argument to the jury concerning section 2800.2, the prosecutor emphasized that defendant's various reckless traffic violations proved he had acted with "willful or wanton disregard," i.e., with *conscious indifference* to the consequences for safety. The entire focus of the prosecutor's argument was on defendant's culpable state of mind while fleeing the police, as evidenced by his inherently dangerous driving maneuvers. The prosecutor never suggested that technical "points" violations committed by defendant were a basis for finding him guilty of violating section 2800.2, or of murder.

Most crucially, all reference to subdivision (b) was omitted from the jury instruction on section 2800.2. When describing the elements of a violation of that statute, the instruction said only that " '[w]illful or wanton' means an act intentionally performed *with a conscious disregard for the safety of persons or property*. It does not necessarily include an intent to injure." (Italics added.)

Thus, beyond doubt, the jury convicted defendant of murder based solely on proof that he fled police pursuit by driving with reckless indifference to safety, conduct which is both inherently dangerous and expressly felonious under subdivision (a) of section 2800.2. It follows that the felony underlying defendant's murder conviction was an inherently dangerous one. Accordingly, I submit, a murder conviction could be premised on his commission of this felony.

But even if section 2800.2 were not an inherently dangerous felony that could support a felony-murder conviction, any error in instructing the jury to the contrary was harmless. Indeed, by remanding to the Court of Appeal for a determination on the issue of prejudice, the majority imply that a no-prejudice conclusion is plausible.

I find such a conclusion inescapable, for two reasons. First, a reasonable jury, properly instructed on an *implied malice* theory of second degree murder, could not have failed to find, on this evidence, the elements of malicious murder. Second, though this jury received no explicit instructions on malice, it necessarily did find, under the instructions which were given, that defendant killed maliciously.

" 'Implied malice, for which the second degree felony-murder doctrine acts as a substitute [fn. omitted], has both a physical and a mental component. . . .

The mental component is the requirement that the defendant "knows that his conduct endangers the life of another and . . . *acts with a conscious disregard for life*." [Citation].' " (*People v. Robertson* (2004) 34 Cal.4th 156, 165 [17 Cal.Rptr.3d 604, 95 P.3d 872], quoting *Patterson, supra,* 49 Cal.3d 615, 626, italics added.)

In my view, the evidence that defendant acted with actual knowledge and conscious disregard of the lethal probabilities is conclusive. No other inference can be drawn from his decision to maintain his careening flight from the police over highways and streets carrying innocent travelers. During the high-speed chase, he swerved over a median boundary of a divided highway and travelled in lanes reserved for oncoming vehicles, risking a head-on collision. With equal purpose, he ran at least three stop signs and two red lights, forcing cross-traffic to yield and creating the obvious danger of crashes at these controlled intersections. In his frantic efforts to outdistance his pursuers, he "fishtailed" into curves and corners, giving rise to the peril of spin-out accidents that could involve other vehicles. The fatal collision occurred in the midst of this course of conduct, as defendant, still trying to escape, ran a red light at high speed.

As a matter of law, I believe, these intentional acts went beyond mere gross negligence or reckless indifference. Defendant—by his own evaluation a skilled driver—must have acted with full awareness that he was thereby placing human life at risk. He cannot evade this responsibility through his inherently implausible testimony that he remembered only bits and pieces of the chase, and could not recall whether the traffic light was red at the fatal intersection when he entered it.

In any event, this jury was told that the felony described in section 2800.2 required a *conscious disregard* for safety. Hence, in finding that defendant caused death in the commission of this felony, the jury necessarily found that he understood the danger, and chose to act anyway, thus exhibiting implied malice. Under these circumstances, reliance on a felony-murder theory, even if error, must be deemed harmless. (Cf., e.g., *People v. Sedeno* (1974) 10 Cal.3d 703, 720–721 [112 Cal.Rptr. 1, 518 P.2d 913].)[3]

Having concluded that defendant's violation of section 2800.2 was an "inherently dangerous" felony for purposes of the felony-murder rule, I must

---

[3] As the majority note, there was evidence that defendant was under the influence of methamphetamines during his reckless flight. But voluntary intoxication cannot negate implied malice. (Pen. Code, § 22, subd. (b).) In any event, the instructions actually alerted the jury to consider defendant's intoxication on the issue whether he acted intentionally, and with conscious disregard for safety. By its verdicts, the jury necessarily resolved that issue against defendant.

address his second argument. Defendant urges that he cannot be prosecuted and punished for felony murder in any event because the Legislature intends section 2800.3 as the only statute under which deaths caused by vehicular flight from the police may be prosecuted and punished without proof of malice.[4]

Defendant invokes the principle that a special statute defining an offense preempts a more general statute encompassing the same conduct. (See, e.g., *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].) But this rule applies only "(1) when each element of the general statute corresponds to an element on the face of the special statute, or (2) when it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute. [Citation.]" (*People v. Watson* (1981) 30 Cal.3d 290, 295–296 [179 Cal.Rptr. 43, 637 P.2d 279].)

Neither circumstance is present here. Both statutes permit punishment, without proof of malice, for fatalities caused by vehicular flight from the police, but the two statutes do not govern such killings identically. Section 2800.3—in defendant's view, the more specific death-related statute—sanctions such a homicide regardless of the fleeing motorist's degree of driving care. By contrast, to be convicted of felony murder under the more "general" statute, section 2800.2, the fleeing motorist must have driven with "a willful or wanton disregard for safety." Thus, the facial elements of the two statutes differ, and a fatality punishable under section 2800.3 will not necessarily or commonly constitute a felony murder under section 2800.2.

Through an exhaustive analysis of legislative history, defendant argues that the Legislature's "carefully crafted" scheme for punishment of pursuit-related fatalities precludes prosecution of such homicides as felony murder. His contention lacks merit. Vehicular flight from the police, with its potential for death, injury, and property damage, has been a growing problem. The Legislature has responded over the years by *expanding* the punishment for such conduct under various circumstances. Among other things, it has provided in section 2800.3 that one whose flight, *however carefully conducted*, causes death or injury may receive up to five years in prison, a $10,000 fine, or both. But nothing indicates the Legislature intended a similar limitation on the punishment of persons who commit homicides while engaged in the inherently dangerous felony of flight from police pursuit *with*

---

[4] Section 2800.3 provides in pertinent part: "Whenever willful flight or attempt to elude a pursuing peace officer in violation of [s]ection 2800.1 proximately causes death or serious bodily injury to any person, the [fleeing motorist], upon conviction, shall be punished by imprisonment in the state prison for three, four, or five years, by imprisonment in the county jail for not more than one year, or by a fine of not less than two thousand dollars ($2,000) nor more than ten thousand dollars ($10,000), or by both that fine and imprisonment."

*willful and wanton disregard for safety.* Every consideration of logic and common sense suggests that such homicides may properly be treated under the law of felony murder.

For all these reasons, I would affirm the judgment of the Court of Appeal.