Filed 12/30/20  P. v. Garcia CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H047574 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS031841B) |
| v. | |
| RUBI FLORENCIA GARCIA, | |
| Defendant and Appellant. | |

In 2018, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).  The bill, which became effective on January 1, 2019, amended Penal Code[1] sections 188 and 189 and narrowed the scope of culpability for murder.  (See Stats. 2018, ch. 1015, §§ 1-3; Cal. Const., art. IV, § 8, subd. (c); Gov. § 9600, subd. (a).)  Section 188 concerns the requirement of malice, either express or implied, for purposes of murder (§ 187).  Section 189 defines first degree and second degree murder.  (See *People v. Harris* (2008) 43 Cal.4th 1269, 1295.)  The enactment of Senate Bill 1437 also added section 1170.95.  (See Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019.)  This section provides a postjudgment procedure by which a person previously convicted of murder may seek, by means of a petition, to vacate his or her murder conviction and obtain resentencing under specified conditions.

Rubi Florencia Garcia filed a section 1170.95 petition, which was denied by the trial court at the prima facie showing stage.  (See § 1170.95, subd. (c).)  On appeal,

---

[1] All further statutory references are to the Penal Code.

Garcia asserts that the trial court erroneously denied the petition and that she is entitled to an evidentiary hearing, as statutorily provided.[2] (See § 1170.95, subds. (c), (d).) We conclude that the trial court erred. The matter will be remanded for further proceedings.

I

*Procedural History*

The information, filed on October 14, 2003, charged Garcia and a codefendant, Glenn Barry Spillman, in count 1 with committing first degree murder in violation of section 187, subdivision (a), on or about May 21, 2003 by "willfully, unlawfully, [and] deliberately, with malice aforethought and with premeditation, murder[ing]" Javier Soto, a human being. The information further alleged that "the murder was perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death as delineated in . . . [s]ection 189." As to both Garcia and Spillman, the information also separately alleged that the murder charged in count 1 "was perpetrated by means of shooting a firearm from a motor vehicle with the intent to inflict great bodily injury" (§ 190, subd. (d) [§ 190(d)]). It alleged as to Garcia that "in the commission and attempted commission" of count 1, "a principal in said offense was armed with a firearm[], to wit: A HANDGUN, said arming not being an element of the above offense (§ 12022, subd. (a)(1))."[3]

---

[2] Garcia asks this court to take judicial notice of the jury instructions given in her 2004 trial. In her request, Garcia acknowledges that the 2004 jury instructions were not presented to the trial court in support of her section 1170.95 petition. We deny the request. "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment [or order], an appellate court will consider only matters which were part of the record at the time the judgment [or order] was entered.' [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3, abrogated on another ground in *Bristol-Myers Squibb Co. v. Superior Court* (2017) ___ U.S. ___, ___ [137 S.Ct. 1773, 1781].)

[3] The information contained other firearm allegations against Spillman.

2

This court's opinion in the direct appeal from the judgment of conviction (*People v. Garcia* (July 6, 2006, H028474) [nonpub. opn.]) stated: "One afternoon in May 2003, Javier Soto was shot and killed as he drove on Highway 101 near White Road in Salinas. Soto was alone in a grey Honda and was headed north when three shots were fired from a pickup truck going in the same direction. Appellant was driving the pickup truck which belonged to her co-defendant Glenn Barry Spillman. Spillman was seated next to appellant[,] and Antonio Garcia was next to Spillman." The opinion recited that a jury had found her "guilty of first degree murder and [had] found a firearm enhancement true. (Pen. Code, §§ 187, 12022, subd. (a)(1).)" This court agreed with Garcia's appellate contention that "the trial court erred in allowing the gang expert testimony and that [she] was prejudiced by the admission of this evidence." We reversed the judgment.

The minutes for September 29, 2006, showed that following remand and upon the prosecutor's motion, count 1 of the information was amended to charge second degree murder and to also strike or delete the words "willful, deliberate, premeditated." Those minutes reflected that Garcia entered a plea of guilty to the amended count 1 and admitted the section 190(d) allegation. Section 190(d) stated, and still states: "Every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 20 years to life if the killing was perpetrated by means of shooting a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict great bodily injury." Garcia was sentenced to 20 years to life on count 1.

On March 22, 2019, Garcia filed in propria persona a petition for resentencing pursuant to section 1170.95. By the checking of boxes on a form petition, Garcia declared the following facts under penalty of perjury: (1) "[a] complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; (2) "I pled guilty or no contest to 1st or 2nd degree murder in lieu of going to trial because I

3

believed I could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine"; and (3) "I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code [sections] 188 and 189, effective January 1, 2019."  Garcia also declared, "I was convicted of 1st degree felony murder[,] and I could not now be convicted because of changes to Penal Code [section] 189, effective January 1, 2019, for the following reasons . . . :  [¶]  I was not the actual killer[;]  [¶]  I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree[;]  [¶]  I was not a major participant in the felony or I did not act with reckless indifference to human life during the course of the crime or felony"[;] and  [¶]  [t]he victim of the murder was not a peace officer in the performance of his or her duties, or I was not aware that the victim was a peace officer in the performance of his or her duties and the circumstances were such that I should not reasonably have been aware that the victim was a peace officer in the performance of his or her duties."[4]  (Emphasis omitted.)

The court appointed the county public defender to represent Garcia.  After the public defender declared a conflict, the court relieved the public defender and appointed the alternate defender.

The People filed opposition to the petition.  Their memorandum set forth a statement of facts based on our appellate opinion, which, as indicated, reversed the conviction.  They contended that the evidence at the 2004 trial showed that codefendant

---

[4] Garcia's statement that she was convicted of first degree murder is incorrect because the conviction was reversed.  The record shows that Garcia stands convicted of second degree murder by plea.  Further, contrary to Garcia's statement in her petition, the record does not reflect that there was "a prior determination by a court or jury that [she] was not a major participant and/or did not act with reckless indifference to human life under . . . [section] 190.2[, subdivision] (d)" (hereafter 190.2(d)).  (See §§ 188, subd. (a)(3), 189, subd. (e)(3).)  Those two inaccuracies do not defeat a prima facie showing.  The People do not argue otherwise.

Spillman was the shooter, that "petitioner aided and abetted him in murdering Javier Soto," and that "Spillman could not have murdered Mr. Soto had petitioner not pursued him in the vehicle, and then slowly driven parallel to Mr. Soto, allowing Spillman a clear shot" with the firearm that he had previously taken out of the vehicle's glove compartment. The People argued that Garcia had "acted with implied malice based upon her actions of setting Spillman up to enable him to shoot at Mr. Soto" and that "[h]er second-degree murder plea directly fits into the still-valid definition of implied malice, in that petitioner intentionally committed an act (in concert with Spillman), the natural and probable consequences of which were dangerous to human life." Attached as exhibits to their opposition were the information filed on October 14, 2004 (exhibit 1); our 2006 appellate opinion reversing the judgment (exhibit 2); the abstract of judgment based on Garcia's subsequent change of plea (exhibit 3); the minutes from the change of plea hearing on September 29, 2006 (exhibit 4); a letter, dated June 20, 2008, from the Legislative Counsel Bureau (exhibit 5); and evidentiary portions of the reporter's transcript from the 2004 trial (exhibit 6).

On June 14, 2019, the trial court denied Garcia's section 1170.95 petition. The court explained: "In this case, the petitioner was the driver of the truck . . . . The shooter was in the middle of the front of the truck and there was a passenger on the side . . . of the truck. All three were in the front of the truck. [¶] An issue arose with the driver of another vehicle on the freeway. From testimony of other witnesses on the freeway and . . . the third occupant of the truck, it is indisputable that the petitioner intentionally pursued the other vehicle, positioned the truck in a manner that allowed the shooter to extend his arm behind her back out of the window to ultimately shoot and kill the victim. [¶] Prior to the positioning of the truck at the time of the shooting, the shooter had removed the firearm from the glove compartment. [¶] At the jury trial, petitioner initially was convicted of first degree murder . . . with an arming enhancement. However, that conviction was reversed on appeal and petitioner then entered a plea to

5

second degree murder. [¶] There is more than sufficient evidence to indicate that petitioner acted with implied malice at a minimum. Additionally, she committed an act[,] the natural and probable consequences of which were dangerous to human life. [¶] Petitioner would definitely be culpable of murder under the current state of the law based on the facts as presented at the jury trial."[5]

## II

### *Governing Law*

A. *Changes to the Law of Murder*

Section 187, subdivision (a), defines murder as "the unlawful killing of a human being, or a fetus, with malice aforethought." As amended effective January 1, 2019 (Stats. 2018, ch. 1015, § 2), section 188, subdivision (a), now provides: "For purposes of [s]ection 187, malice may be express or implied. [¶] (1) Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature. [¶] (2) Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart. [¶] (3) Except [for felony murder liability] as stated in subdivision (e) of

---

[5] In their opposition, the People further argued that Senate Bill 1437 unconstitutionally amended Proposition 7 (the 1978 Briggs initiative) and Proposition 115 (the 1990 Crime Victims Justice Reform Act). Given the trial court's conclusion that Garcia had not made a prima facie showing, the court found it unnecessary to resolve whether section 1170.95 was constitutional or constituted "an improper overreach by the legislature altering the will of the voters." Many appellate courts have now concluded that Senate Bill 1437 did not unconstitutionally amend Proposition 7 or Proposition 115. (See, e.g., *People v. Lombardo* (2020) 54 Cal.App.5th 553, 560-561 (3rd Dist.); *People v. Nash* (2020) 52 Cal.App.5th 1041, 1056-1069 (5th Dist.), review den. Oct. 21, 2020, S264379; *People v. Bucio* (2020) 48 Cal.App.5th 300, 307-312 (2d Dist., Div. 6), review den. July 8, 2020, S262499; *People v. Solis* (2020) 46 Cal.App.5th 762, 775-784 (4th Dist., Div. 3); *People v. Cruz* (2020) 46 Cal.App.5th 740, 747-761 (4th Dist., Div. 3); *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 251 (4th Dist., Div. 1), review den. Feb. 19, 2020, S259835; *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 280-288 (4th Dist., Div. 1), review den. Feb. 19, 2020, S259700.)

[s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (See *People v. Gentile* (Dec. 17, 2020, S256698) ___ Cal.5th ___, ___ [2020 Cal. Lexis 8575, at *11] (*Gentile*).) The substantive change was the language in subdivision (a)(3). (Compare Stats. 2018, ch. 1015, § 2 with Stats. 1982, ch. 893, § 4.)

"Section 189 codifies the first degree felony-murder rule [citation]" (*People v. Banks* (2015) 61 Cal.4th 788, 810) and serves "a degree-fixing function." (*People v. Harris* (2008) 43 Cal.4th 1269, 1295.) "[F]irst degree felony murder, along with the predicate crimes underlying it, is expressly described in section 189." (*People v. Powell* (2018) 5 Cal.5th 921, 943.) The amendment of section 189 by the passage of Senate Bill 1437 limited the scope of felony murder culpability.[6] (See Stats. 2018, ch. 1015, § 3.) Section 189, subdivision (e), now provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if *one of the following* is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the *intent to kill*, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of *murder in the first degree*. [¶] (3) The person was a *major participant* in the underlying felony and acted with *reckless indifference to human life*, as described in subdivision (d) of Section 190.2."[7] (Italics added.) Subdivision (f) of

---

[6] Under section 189, subdivision (a), first degree murder includes—as it did at the time of the 2003 shooting—murder "perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death." (§ 189, subd. (a); Stats. 2002, ch. 606, § 1.)

[7] An appellate court has concluded that "the standard under section 189, subdivision (e)(3) for holding . . . a defendant liable for [first degree] felony murder is the same as the standard for finding a special circumstance under section 190.2(d), as the former provision expressly incorporates the latter." (*In re Taylor* (2019) 34 Cal.App.5th 543, 561; see *In re Scoggins* (2020) 9 Cal.5th 667, 677 [explaining the subjective and objective elements of reckless indifference to human life within the meaning of

section 189 makes subdivision (e) inapplicable "to a defendant when the victim is a peace officer who was killed while in the course of his or her duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of his or her duties."

As Garcia points out, even before the passage of Senate Bill 1437, the Supreme Court held that "an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine." (*People v. Chiu* (2014) 59 Cal.4th 155, 158-159 (*Chiu*), superseded by statute on other grounds as stated in *Gentile*, *supra*, ___ Cal.5th at p. ___ [2020 Cal. Lexis 8575, at *16-21].) The court explained that "where the direct perpetrator is guilty of first degree premeditated murder, the legitimate public policy considerations of deterrence and culpability would not be served by allowing a defendant to be convicted of that greater offense under the natural and probable consequences doctrine." (*Id*. at p. 166.) However, the court made clear that "[a]iders and abettors may still be convicted of first degree premeditated murder based on direct aiding and abetting principles. [Citation.]" (*Id*. at pp. 166-167.) "Under those principles, the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission. [Citation.]" (*Id*. at p. 167.)

As indicated, under section 188, as amended, malice can no longer "be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) This change impacts the second degree felony-murder rule. (See *People v. Elmore* (2014) 59 Cal.4th 121, 134, fn. 6 ["Malice is imputed in cases of felony murder . . . ."] (*Elmore*); see *People v. Chun* (2009) 45 Cal.4th 1172, 1182 ["The felony-murder rule makes a

---

section190.2(d)]; *People v. Clark* (2016) 63 Cal.4th 522, 611 [discussing the ultimate question and factors pertaining to being a major participant within the meaning of section 190.2(d).]

killing while committing certain felonies murder without the necessity of further examining the defendant's mental state"]; p. 1184 ["the felony-murder rule 'acts as a substitute' for conscious-disregard-for-life malice" and " 'imputes the requisite malice for a murder conviction' "] (*Chun*), superseded by statute as stated in *People v. Lamoureux*, *supra*, 42 Cal.App.5th at pp. 247-249.) The amendment of section 188 also eliminates the natural and probable consequences doctrine in the context of second degree murder. (*Gentile*, *supra*, ___ Cal.5th at p. ___ [2020 Cal. Lexis 8575, at *2-3]; see *Chiu*, *supra*, 59 Cal.4th at p. 164 ["culpability under the natural and probable consequences doctrine is vicarious"]; *People v. Nguyen* (1993) 21 Cal.App.4th 518, 531 ["The determination whether a particular criminal act was a natural and probable consequence of another criminal act aided and abetted by a defendant requires application of an objective rather than subjective test . . . [and] the issue does not turn on the defendant's subjective state of mind"].) That is because "the natural and probable consequences doctrine authorizes precisely what Senate Bill 1437 forbids: it allows a factfinder to impute malice 'to a person based solely on his or her participation in a crime.' (§ 188(a)(3).)" (*Gentile*, *supra*, ___ Cal.5th at p. ___ [2020 Cal. Lexis 8575, at *21].) Accordingly, in *Gentile*, the California Supreme Court held that "Senate Bill 1437 bars a defendant from being convicted of second degree murder under a theory that the defendant aided and abetted a crime, the natural and probable consequence of which was murder."[8] (*Id*. at p. ___ [2020 Cal. Lexis 8575, at *12]; see *id*. at pp. ___, ___ [2020 Cal. Lexis 8575, at *2-3, *29].)

Express and implied malice murder continue to be viable theories following the changes to sections 188 and 189 made by Senate Bill 1437. (See §§ 187-189.) Malice is "express 'when there is manifested a deliberate intention unlawfully to take away the life

---

[8] In *Gentile*, the Supreme Court further held that "the procedure set forth in section 1170.95 is the exclusive mechanism for retroactive relief and thus the ameliorative provisions of Senate Bill 1437 do not apply to nonfinal judgments on direct appeal." (*Gentile*, *supra*, ___ Cal.5th at p. ___ [2020 Cal. Lexis 8575, at *3]; see *id*. at p.___ [2020 Cal. Lexis 8575, at *30].)

of a fellow creature.' (§ 188; *People v. Mattison* (1971) 4 Cal.3d 177, 182.)" (*People v. Nieto Benitez* (1992) 4 Cal.4th 91, 102 (*Nieto Benitez*).) Intent to kill may constitute express malice. (See *People v. Gonzalez* (2012) 54 Cal.4th 643, 653; *People v. Swain* (1996) 12 Cal.4th 593, 601-602.) " 'The act of shooting a firearm toward a victim at close range in a manner that could have inflicted a mortal wound had the shot been on target is sufficient to support an inference of an intent to kill.' (*People v. Houston* (2012) 54 Cal.4th 1186, 1218, 144 Cal.Rptr.3d 716, 281 P.3d 799.)" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 892.)

"[I]mplied malice may be found when a defendant, knowing that his or her conduct endangers life and acting with conscious disregard of the danger, commits an act the natural consequences of which are dangerous to life. [Citation.] Thus, to invoke a classic example, a person who fires a bullet through a window, not knowing or caring whether anyone is behind it, may be liable for homicide regardless of any intent to kill." (*People v. Roberts* (1992) 2 Cal.4th 271, 317; see *Nieto Benitez*, *supra*, 4 Cal.4th at p. 104.) "The primary difference between express malice and implied malice is that the former requires an intent to kill but the latter does not. (*People v. Saille* (1991) 54 Cal.3d 1103, 1115.)" (*People v. Soto* (2018) 4 Cal.5th 968, 976 (*Soto*).)

An implied malice theory of murder, as distinguished from the natural and probable consequences doctrine, "requires that the prosecution demonstrate the defendant in fact acted with malice. [Citation.]" (*Nieto Benitez*, *supra*, 4 Cal.4th at p. 106.) "The concept of implied malice has both a physical and a mental component. [Citation.] The physical component is satisfied by the performance of ' "an act, the natural consequences of which are dangerous to life.' ' [Citation.] The mental component . . . involves an act ' "deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life. . . ." ' [Citation.]" (*Id*. at pp. 106-107.) "The very nature of implied malice . . . invites consideration of the circumstances preceding the fatal act. [Citations.]" (*Id*. at p. 107.)

10

B. *A Postjudgment Petition to Vacate a Murder Conviction Pursuant to Section 1170.95*

Section 1170.95, subdivision (a) (1170.95(a)) provides: "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."

The petition must include, among other things, "[a] declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a)." (§ 1170.95, subd. (b)(1)(A).) The petition must specify "[w]hether the petitioner requests the appointment of counsel." (*Id.*, subd. (b)(1)(C).) "If any of the information required by . . . subdivision [(b)(1)] is missing from the petition and cannot be readily ascertained by the court, the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information." (*Id.*, subd. (b)(2).) An appellate court has concluded that "[t]he reference to 'readily ascertained' information indicates the legislature's intent that the trial court consider reliable, accessible information— specifically the record of conviction. [Citation.]" (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1177, review granted Jun. 24, 2020, S262011.)

Section 1170.95, subdivision (c) (hereafter 1170.95(c)) provides: "The court shall review the petition and determine if the petitioner has made a *prima facie showing* that

11

the petitioner *falls within the provisions of this section*.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a *prima facie showing* that he or she is *entitled to relief*, the court shall issue an order to show cause."  (Italics added.)

This court has concluded that "[b]y its text, section 1170.95(c) thus requires the trial court to make two [prima facie] assessments."[9]  (*People v. Drayton* (2020) 47 Cal.App.5th 965, 975-976 (*Drayton*).)  "The first is whether the petitioner has made a prima facie showing of *eligibility for* relief.  A petitioner is eligible for relief if he or she makes a prima facie showing of the three criteria listed in section 1170.95(a)—namely he or she (1) was charged with murder 'under a theory of felony murder or murder under the natural and probable consequences doctrine,' (2) was convicted of first or second degree murder, and (3) can no longer be convicted of first or second degree murder 'because of changes to Section 188 or 189 made effective January 1, 2019.'  (§ 1170.95(a)); ([*People v. Verdugo* (2020) 44 Cal.App.5th 320,] 328, 329[, review granted Mar. 18, 2020, S260493]; see also § 1170.95, subd. (b)(1)(A) [stating the petition must include a

---

[9] Another appellate court has concluded that a trial court evaluates whether the petitioner has made a prima facie showing only once: "[W]e read subdivision (c)'s first sentence—'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section'—as a topic sentence summarizing the trial court's task before issuing an order to show cause, and the following sentences to specify the procedure in undertaking that task."  (*People v. Cooper* (2020) 54 Cal.App.5th 106, 118 (*Cooper*), review granted Nov. 10, 2020, S264684.)  The court "decline[d] to adopt the view that section 1170.95(c) requires two prima facie reviews—much less two reviews that are substantively different . . . ."  (*Ibid.*; accord, *People v. Daniel* (2020) 57 Cal.App.5th 666, 674 (*Daniel*), petn. for review filed Dec. 29, 2020, S266336.)  Even if this view is correct, it does not affect our analysis in this case.

declaration by the petitioner that 'he or she is eligible for relief under this section, based on all the requirements of subdivision (a)'].)" (*Ibid.*) This "prebriefing 'first prima facie review' is a 'preliminary review of statutory eligibility for resentencing[.]" (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897 (*Tarkington*), review granted Aug. 12, 2020, S263219; but see *Cooper*, *supra*, 54 Cal.App.5th at pp. 118-119, review granted Nov. 10, 2020, S264684; *Daniel*, *supra*, 57 Cal.App.5th at p. 674, petn. for review filed Dec. 29, 2020, S266336.) "The court's role at this stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner. [Citation.]" (*People v. Verdugo*, *supra*, 44 Cal.App.5th at p. 329 (*Verdugo*), review granted Mar. 18, 2020, S260493; but see *Cooper*, *supra*, 54 Cal.App.5th at pp. 118-119, review granted Nov. 10, 2020, S264684; *Daniel*, *supra*, 57 Cal.App.5th at p. 674, petn. for review filed Dec. 29, 2020, S266336.)

If the trial court determines that the petitioner has made a prima facie showing of eligibility for relief, "the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief. [Citation.]" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330, review granted Mar. 18, 2020, S260493; but see *Cooper*, *supra*, 54 Cal.App.5th at pp. 118-119, review granted Nov. 10, 2020, S264684; *Daniel*, *supra*, 57 Cal.App.5th at p. 674, petn. for review filed Dec. 29, 2020, S266336.) In conducting "the 'second' inquiry into the prima facie showing under section 1170.95(c)" (*Drayton*, *supra*, 47 Cal.App.5th at p. 976), "the trial considers whether the petitioner has made a prima facie showing of *entitlement to* (rather than eligibility for) relief." (*Ibid.*; see *Tarkington*, *supra*, 49 Cal.App.5th at p. 897, review granted Aug. 12, 2020, S263219; but see *Cooper*, *supra*, 54 Cal.App.5th at pp. 118-119, review granted Nov. 10, 2020, S264684; *Daniel*, *supra*, 57 Cal.App.5th at p. 674, petn. for review filed Dec. 29, 2020, S266336.)

In *Drayton*, this court concluded that "with respect to the trial court's assessment of whether the petitioner has made a prima facie showing of entitlement to relief under section 1170.95(c), . . . habeas corpus procedures are sufficiently similar to provide a reasonable construction of the meaning of the relevant language in subdivision (c). (See *Verdugo, supra*, 44 Cal.App.5th at p. 328[, review granted Mar. 18, 2020, S260493].)" (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) "Using the habeas corpus procedures as a guide to the legislative intent with respect to the court's review of the ' "prima facie showing that [the petitioner] is entitled to relief" ' under section 1170.95(c), we conclude[d] that, when assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true. (*Verdugo, supra*, 44 Cal.App.5th at p. 328, review granted Mar. 18, 2020, S260493; but see *People v. Garcia* (2020) 57 Cal.App.5th 100, 116, petn. for review filed Dec. 7, 2020, S265692.) The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing." (*Ibid.*; see *Tarkington*, *supra*, 49 Cal.App.5th at p. 898, review granted Aug. 12, 2020, S263219 ["In this second prima facie evaluation, the [trial] court employs the familiar standard for issuance of an order to show cause in a habeas corpus proceeding."]; but see *People v. Garcia*, *supra*, 57 Cal.App.5th at p. 116, petn. for review filed Dec. 7, 2020, S265692.)

We explained in *Drayton*, "Just as in habeas corpus, if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' ([*In re*] *Serrano* [(1995)] 10 Cal.4th [447,] 456.) However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd[ivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as

14

determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) In evaluating the sufficiency of a petitioner's prima facie showing under section 1170.95(c), a trial court can consider the record of conviction, including an appellate opinion in a petitioner's direct appeal from the judgment of conviction, to determine whether factual assertions made in the petition are refuted as a matter of law. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137-1138 (*Lewis*)[10]; see *id*. at p. 1136, fn. 7; but see *People v. Garcia*, *supra*, 57 Cal.App.5th at p. 116, petn. for review filed Dec. 7, 2020, S265692.)

In *Drayton*, we said that "because the petitioner does not bear the ultimate burden of proof under section 1170.95, 'the superior court's issuance of an order to show cause [under section 1170.95(c)] is only an assessment that petitioner has met a pleading burden, not a production burden.' " (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) Within the time limits specified, the court must "hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence."[11] (§ 1170.95, subd. (d)(1).)

_____

[10] The Supreme Court granted review in *Lewis*, *supra*, 43 Cal.App.5th 1128, review granted March 18, 2020, S260598. The court limited review to the following issues: "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95?" and "(2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)?" (<https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=2311967&doc_no=S260598&request_token=NiIwLSEmXkg%2FWzBFSCJdSEtIIDw0UDxTJSJeUzNRMCAgCg%3D%3D> [as of Dec. 30, 2020], archived at <http://perma.cc/BE6E-YTXP>.)

[11] However, "[t]he parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and for resentencing." (§ 1170.95, subd. (d)(2).) "If there was a prior finding by a court or jury that the

15

In *Drayton*, this court said that "[o]nce the trial court issues the order to show cause, the burden of proof shifts to the prosecution." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) To be most accurate, the petitioner has the burden of stating the prima facie case for relief—a pleading burden—but the prosecution has the burden of proof. (§ 1170.95, subds. (c), (d)(3); *Drayton*, *supra*, 47 Cal.App.5th at p. 980; cf. *People v. Duvall* (1995) 9 Cal.4th 464, 474 [habeas petitioner has the "initial burden of pleading adequate grounds for relief"].)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or *offer new or additional evidence* to meet their respective burdens." (§ 1170.95, subd. (d)(3), italics added.)

"If [a] petitioner is entitled to relief pursuant to [section 1170.95], murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes. Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose." (§ 1170.95, subd. (e).)

In *Drayton*, this court determined that its "analysis of the trial court's order focuse[d] on the trial court's interpretation of section 1170.95(c)," which meant that review was "de novo." (*Drayton*, *supra*, 47 Cal.App.5th at p. 981.) The proper construction of a statute is a question of law, which reviewing courts consider de novo.

---

petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (*Ibid*.)

16

(See *People v. Grimes* (2016) 1 Cal.5th 698, 712.) Even under an abuse of discretion standard of review, a trial court's conclusions of law are reviewed de novo (*Packer v. Superior Court* (2014) 60 Cal.4th 695, 710), and the trial court's exercise of its discretion is " ' "subject to the limitations of legal principles governing the subject of its action." ' [Citation.]" (*People v. Eubanks* (1996) 14 Cal.4th 580, 595.) " '[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' [Citation.]" (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.) "Where the trial court's decision rests on an error of law, . . . the trial court abuses its discretion." (*People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 742.)

The issues raised in this appeal involve questions of law rather than review of any judicial exercise of discretion, and we apply the de novo standard of review.

III

*Discussion*

A. *Judicial Factfinding Prohibited at the Prima Facie Showing Stage*

Garcia argues that "a trial court may summarily deny a section 1170.95 petition, without ordering a hearing, only when the record of conviction establishes *without contradiction* that a petitioner is ineligible for relief as a matter of law." Citing *Drayton*, she states that "the trial court's authority to make factual findings without conducting an evidentiary hearing 'is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime).' " (See *Drayton*, *supra*, 47 Cal.App.5th at p. 980.)

This court has already concluded that "[i]n assessing the petitioner's prima facie showing, the trial court should not weigh evidence or make credibility determinations." (*Drayton*, 47 Cal.App.5th at p. 968.) In other words, at the preliminary "prima facie

17

showing" stage, judicial factfinding is prohibited. (See *id*. at pp. 980, 982; see also § 1170.95(c).) The questions at the prima facie stage in this case were (1) whether the petitioner's declaration in support of a petition stated a prima facie case of entitlement to relief (§ 1170.95, subds. (a)-(c)) and (2) whether any essential allegation of the petition was conclusively negated or refuted *as a matter of law*, which defeated the prima facie case.

B. *Natural and Probable Consequences Theory in the Murder Context*

As indicated, the trial court in ruling on the petition stated that "[t]here is more than sufficient evidence to indicate that petitioner acted with implied malice at a minimum" and that she "committed an act the natural and probable consequences of which were dangerous to human life." Relying on those judicial remarks, Garcia now asserts that "the record plainly reflects that trial court's ruling is predicated on its failure to understand that [Senate Bill] 1437 abrogated the natural and probable consequences doctrine as a basis of liability for second degree murder."

While the record does not reflect that the trial court relied on the natural and probable consequences doctrine in denying her section 1170.95 petition, it does appear that the court considered the theory of implied malice murder. Garcia claims that since Senate Bill 1427 completely abolished the natural and probable consequences doctrine as a basis for a second degree murder conviction, an aider and abettor cannot be held liable for murder under the natural and probable consequences doctrine *or* on an implied malice theory. She "submits that in the wake of [Senate Bill] 1437's abolition of the natural and probable consequences doctrine, aiding and abetting cannot be committed with implied malice, because implied malice is inconsistent with the specific intent element of direct aiding and abetting." Garcia maintains that a person "cannot specifically intend to aid and abet a murder by implied malice" and that "[b]ecause indirect aiding and abetting on a theory of implied malice has been abolished, [her] conviction must be vacated unless her express malice is proven beyond a reasonable doubt" at an evidentiary hearing.

18

Before the changes made by the enactment of Senate Bill 1437, there were "two distinct forms of culpability for aiders and abettors. (*Chiu*, *supra*, 59 Cal.4th at p. 158.) "First, an aider and abettor with the necessary mental state [was] guilty of the intended crime. Second, under the natural and probable consequences doctrine, an aider and abettor [was] guilty not only of the intended crime, but also "for any other offense that was a 'natural and probable consequence' of the crime aided and abetted." ' [Citation.]" (*Ibid.*)

Although the natural and probable consequences doctrine and the definition of implied malice both contain the phrase "natural and probable consequences," these theories of culpability are distinct. (See *People v. Soto* (2020) 51 Cal.App.5th 1043, 1056-1057, review granted Sept. 23, 2020, S263939.) Garcia has cited no evidence to suggest that the Legislature, in passing Senate Bill 1437, was seeking to do away with implied malice murder. Section 188, as amended, continues to state that "malice may be express or implied." (§ 188, subd. (a).) It mandates that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought" (§ 188, subd. (a)(3)), except as stated in section 189, subdivision (e). (§ 188, subd. (a)(3).) (See *ante*, fn. 7.) "Malice is implied when an unlawful killing results from a willful act, *the natural and probable consequences* of which are dangerous to human life, performed with conscious disregard for that danger. [Citations.]" (*Elmore*, *supra*, 59 Cal.4th at p. 133, italics added.)

In a homicide, "the dividing line between the actual perpetrator and the [direct] aider and abettor is often blurred. It is often an oversimplification to describe one person as the actual perpetrator and the other as the aider and abettor. When two or more persons commit a crime together, both may act in part as the actual perpetrator and in part as the [direct] aider and abettor of the other, who also acts in part as an actual perpetrator." (*McCoy*, *supra*, 25 Cal.4th at p. 1120.) "[I]n a homicide prosecution *not* involving felony murder or the natural and probable consequences doctrine, the

19

aider/abettor's guilt is based on the combined acts of all the principals and on the aider/abettor's own knowledge and intent." (*People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 917, italics added.) "[W]henever a person aids, or perhaps induces, another to kill, whether that other person is entirely innocent . . . or less culpable . . . or, potentially, more culpable, . . . each person's guilt would be based on the combined actus reus of the participants, but also solely on that person's own mens rea." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1121 (*McCoy*) ["Each person's level of guilt would ' "float free." ' [Citation.]"].) "If the mens rea of aider and abettor is more culpable than the actual perpetrator's, the aider and abettor may be guilty of a more serious crime than the actual perpetrator." (*Id*. at p. 1120.)

Since a direct aider and abettor's "guilt [in a homicide prosecution] is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state" (*McCoy*, *supra*, 25 Cal.4th at p. 1117; see *id*. at pp. 1118-1120), the direct "aider and abettor's guilt for the intended crime is not entirely vicarious." (*Id*. at p. 1117.) In other words, guilt is not imputed to the direct aider and abettor of a killing "based *solely* on his or her participation in a crime." (§ 188, subd. (a)(3), italics added.)

In contrast, [a]ider and abettor culpability under the natural and probable consequences doctrine is vicarious in nature. [Citations.]" (*Chiu*, *supra*, 59 Cal.4th at p. 164.) "Aider and abettor liability under the natural and probable consequences doctrine does not require assistance with or actual knowledge and intent relating to the nontarget offense, nor subjective foreseeability of either that offense or the perpetrator's state of mind in committing it. [Citation.] It only requires that under all of the circumstances presented, a *reasonable person* in the defendant's position would have or should have known that the nontarget offense was a reasonably foreseeable consequence of the act aided and abetted by the defendant. [Citation.]" (*Id*. at pp. 165-166, italics added.) Until the recent changes in the law of murder, "[s]o long as the direct perpetrator possessed malice, and the killing was a natural and probable consequence of the crime

20

the defendant aided and abetted, it did not matter whether the defendant intended to kill or acted with conscious disregard for human life. (*Chiu*, *supra*, 59 Cal.4th at pp. 165-166.)" (*Gentile*, *supra*, ___ Cal.5th at p. ___ [2020 Cal. Lexis 8575, at *15-16].)

We find it unnecessary to resolve defendant's claims that (1) the elimination of second degree murder liability under the natural and probable consequences doctrine means that a person who is not the actual killer cannot be guilty of second degree murder based on the person's implied malice and that (2) such person is culpable of second degree murder only if he or she acted as a direct aider and abettor with express malice. At the prima facie showing stage under section 1170.95, courts do not consider the theories upon which the prosecution might be able "to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) Instead, courts assess only whether the petitioner made a prima facie showing of entitlement to relief. (See § 1170.95(c).) However, we do note that in *Gentile*, the Supreme Court stated that "notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*Gentile*, *supra*, ___ Cal.5th at p. ___ [2020 Cal. Lexis 8575, at *27].)

C. *Substantial Evidence Standard of Review Does Not Apply at the Prima Facie Stage*

Garcia argues that the trial court erred by applying a deferential appellate standard of review—namely, the sufficiency of the evidence standard—at the prima facie showing stage. She asserts that "[b]ecause [Senate Bill] 1437 narrowed the statutory definition of murder and created a retroactive mechanism to challenge . . . prior convictions, it would be fundamentally unfair to permit a court to deny a petition for resentencing on the grounds that a valid basis for conviction is merely supported by substantial evidence."

The People suggest that Garcia misconstrues the basis for the court's ruling. They claim that the court was not applying the substantial evidence test when it stated that there was "more than sufficient evidence to indicate that [Garcia] acted with implied malice at a minimum," that Garcia "committed an act the natural and probable consequences of which were dangerous to human life," and that Garcia "would definitely be culpable of murder under the current state of the law *based on the facts as presented at the jury trial*." (Italics added.)

The People's assertion on appeal that the 2004 evidentiary trial record does not support her statement as to the third condition, even if true, is not relevant or determinative at the prima facie stage. As indicated, at the prima facie stage, a court must assume that a petitioner's legally unrefuted statements are true, and it may not engage in credibility determinations, the weighing of evidence, or factfinding. (See *Drayton*, *supra*, 47 Cal.App.5th at pp. 968, 980, 982; but see *People v. Garcia*, *supra*, 57 Cal.App.5th at p. 116, petn. for review filed Dec. 7, 2020, S265692.)

The record reflects that the trial court misunderstood its function at the prima facie showing stage. We reiterate that in ruling on a petition at the prima facie showing stage, a trial court merely determines whether any of the petitioner's essential factual statements are negated or refuted as a matter of law and whether the remaining statements, assuming their truth, preliminarily establish that the petitioner is "entitled to relief" under section 1170.95(c). (See *Drayton*, *supra*, 47 Cal.App.5th at pp. 968, 980; but see *People v. Garcia*, *supra*, 57 Cal.App.5th at p. 116, petn. for review filed Dec. 7, 2020, S265692.) Evidence adduced at Garcia's 2004 trial—which resulted in a judgment of conviction, which this court reversed—does not render any of the petition's essential factual assertions untrue *as a matter of law*. (See *Drayton*, *supra*, at p. 980.)

At the prima facie stage, a trial court's application of the substantial evidence test or its own assessment of testimony adduced at an earlier trial is inconsistent with the procedure set forth in section 1170.95(c), which merely requires petitioner to make "a

prima facie showing." As this court has recognized, at this stage, a petitioner has only a pleading burden, not the burden of proof. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 980.) Thus, a trial court evaluates the petition at this stage by asking whether the petition's legally unrefuted factual statements, if true, would entitle the petitioner to relief. (*Id.* at pp. 980, 982; but see *People v. Garcia*, *supra*, 57 Cal.App.5th at p. 116, petn. for review filed Dec. 7, 2020, S265692) At the hearing stage, in contrast, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170, subd. (d)(3).) In this case, the trial court erred by engaging in its own assessment of the evidence adduced at the 2004 trial at the prima facie showing stage. (See § 1170.95(c).)

D. *The Effect of Garcia's Guilty Plea and Admission of Section 190(d) Allegation*

Garcia maintains that the only facts established by her guilty plea are the admitted allegations of the information. She acknowledges that "[b]y and through her plea, [she] admitted that she unlawfully, and with malice aforethought, committed the second degree murder of Javier Soto on or about May 21, 2003, and that the murder was perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle" within the intent required by section 190(d)—i.e., intent to inflict great bodily injury.[12] Garcia claims that her acceptance of "legal responsibility for an unlawful killing with malice aforethought" did not establish the underlying form of malice.

Garcia asserts that "the issue of whether [she] is entitled to relief boils down to whether her culpability [was] based on direct aiding and abetting with express malice, or implied malice as a natural and probable consequence of aiding and abetting a nontarget

---

[12] At one point, Garcia erroneously indicated in her opening brief that at the change of plea hearing, she admitted that "the murder was perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle, with the intent to *inflict death*." (Italics added.)

23

offense." She argues that since Senate Bill 1437 abolished the natural and probable consequences doctrine, she is entitled to an evidentiary hearing.

The People reason that Garcia's plea admitted that "she committed the murder with the mens rea of malice aforethought" and that her plea "necessarily admitted that she committed second degree murder with either express or implied malice." They further contend that regardless of any misunderstanding of the trial court as to the proper standard for considering Garcia's petition, Garcia's "plea necessarily admitted that she committed murder with the mens rea of malice aforethought." On this basis, they suggest that Garcia "failed to make a prima facie showing that section 1170.95 applied to her" and that the trial court's ruling was correct in law, regardless of the reasons it gave. (See *People v. Zapien* (1993) 4 Cal.4th 929, 976.) They argue that consequently Garcia is not entitled to an evidentiary hearing under section 1170.95, subdivision (d).

"A guilty plea admits every element of the charged offense and constitutes a conviction [citations]." (*In re Chavez* (2003) 30 Cal.4th 643, 649; see § 1016, subd. 3.) A defendant's guilty plea in effect "concedes that the prosecution possesses legally admissible evidence sufficient to prove [the] defendant's guilt beyond a reasonable doubt" (*People v. Turner* (1985) 171 Cal.App.3d 116, 125; but see § 1538.5, subd. (m)) under then existing law.

However, Garcia's guilty plea says nothing about whether malice could be imputed to her under then existing law, regardless of her subjective mental state. The People have not disputed that at the time Garcia pleaded guilty to second degree murder, the prosecution could have, upon any retrial, sought to convict her under the felony murder rule or the natural and probable consequences doctrine. Since "an accusatory pleading charging murder need not specify the theory of murder upon which the prosecution intends to rely" (*People v. Abel* (2012) 53 Cal.4th 891, 937) and "a murder charge under section 187 places the defense on notice of, and allows trial and conviction on, all degrees and theories of murder" (*People v. Contreras* (2013) 58 Cal.4th 123, 149),

24

any reliance by the People on the fact that the information to which Garcia pleaded guilty did not state a predicate felony for felony murder or any nonhomicide target offense is misplaced. Moreover, the mere fact that that count 1 of the information, as amended, retained the words "malice aforethought" is not determinative since the very definition of murder is "the unlawful killing of a human being, or a fetus, with *malice aforethought*." (§ 187, subd. (a), italics added.)

We see nothing to suggest that Legislature intended a guilty plea to murder to necessarily foreclose relief under section 1170.95. As stated, the section sets forth three conditions for establishing entitlement for relief, including the second condition that "[t]he petitioner was convicted of first degree or second degree murder following a trial *or accepted a plea offer in lieu of a trial* at which the petitioner could be convicted for first degree or second degree murder." (§ 1170.95(a)(2), italics added.) On appeal, the People make no claim that the petition insufficiently stated the first condition[13] or the second condition.[14]

Moreover, Garcia entered her guilty plea *before* the Supreme Court held in 2009 that "all assaultive-type crimes, such as a violation of section 246, merge with the

_____

[13] In the trial court, the People conceded that Garcia had shown that "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine." (§ 1170.95(a)(1).)

[14] As indicated, by the checking of a box on her form petition, Garcia stated: "I pled guilty or no contest to 1st or 2nd degree murder in lieu of going to trial because I believed I could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine." That language did not quite say that she had "accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder." (§ 1170.95(a)(2).) However, the People have *not* objected to the petition's phrasing, suggested that Garcia did not accept a plea offer, or asserted that she did not make a prima facie showing as to the second condition. Rather, in their opposition filed in the trial court, they stated that Garcia had entered a plea to second degree murder for a stipulated prison term and conceded that her petition satisfied the second eligibility requirement.

25

charged homicide and cannot be the basis for a second degree felony-murder instruction." (*Chun*, *supra*, 45 Cal.4th at p. 1178.) If Garcia had not pleaded guilty to second degree murder, upon retrial the prosecution could have relied on the then valid felony murder rule and argued that she was culpable for a violation of section 246.[15] And it could have also relied on the then valid doctrine of natural and probable consequences and argued that she had directly aided and abetted a violation of section 246 or section 417.3,[16] the natural and probable consequences of which included murder.

The contested question before the trial court concerned the adequacy of Garcia's prima facie showing that she "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95(a)(3).) Her declaration stated exactly that—to wit, "I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code [sections] 188 and 189, effective January 1, 2019." Garcia's guilty plea did not refute that statement. The People have not demonstrated, either below or on appeal, that this statement was negated or refuted as a matter of law. We agree with Garcia that her "concession" by plea that "the prosecution had sufficient evidence to convict her of second degree murder in 2006" did not establish that if she were tried after

---

[15] Section 246 provided in 2003, and still provides: "Any person who shall maliciously and willfully discharge a firearm at an . . . occupied motor vehicle . . . is guilty of a felony . . . ." Prior to *Chun*, the California Supreme Court stated as to second degree felony-murder that " '[a] homicide that is a direct causal result of the commission of a felony *inherently dangerous to human life* (other than the . . . felonies enumerated in [section] 189) constitutes at least second degree murder.' [Citation.]" (*People v. Howard* (2005) 34 Cal.4th 1129, 1135.) "[S]hooting at a vehicle that is actually occupied clearly is inherently dangerous." (*Chun*, *supra*, 45 Cal.4th at p. 1188.)

[16] Section 417.3 then provided, and still provides: "Every person who, except in self-defense, in the presence of any other person who is an occupant of a motor vehicle proceeding on a public street or highway, draws or exhibits any firearm, whether loaded or unloaded, in a threatening manner against another person in such a way as to cause a reasonable person apprehension or fear of bodily harm is guilty of a felony . . . ."

January 1, 2019, the People would be able to prove that she was guilty of murder beyond a reasonable doubt.

We conclude that the trial court's erred by denying the petition and finding that Garcia had not made a prima facie showing of entitlement to relief based on its own assessment of the evidence adduced at Garcia's 2004 trial. In light of our conclusion, we find it unnecessary to resolve Garcia's remaining appellate contentions, including an ineffective assistance of counsel claim.[17] We conclude that the matter must be remanded to allow the trial court to consider the prosecution's constitutional arguments. (See *ante*, fn. 5.) If those constitutional arguments are abandoned by the prosecution or the trial court finds them without merit, an order to show cause must be issued. (See § 1170.95(c) ["If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."].)

## DISPOSITION

The order denying the section 1170.95 petition is reversed. The matter is remanded for further proceedings consistent with this opinion.

---

[17] Garcia devotes considerable discussion to the possible standard that a trial court must apply at a hearing on a petition, after it had determined that a petitioner had made a prima facie showing of entitlement to relief. We do not reach that issue, which is premature in this case. Neither do we address her suggestion that at any hearing on her petition, the trial court would determine the factual basis and theory of malice underlying her guilty plea.

27

_____

ELIA, J.

WE CONCUR:


_____

PREMO, Acting P.J.


_____

BAMATTRE-MANOUKIAN, J.


*People v. Garcia*
H047574