Filed 4/23/21

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHRISTOPHER DEHUFF,<br><br>    Defendant and Appellant. | B305374<br><br>(Los Angeles County Super. Ct. No. PA028453) |


        APPEAL from an order of the Superior Court of Los Angeles County, Michael Terrell, Judge.  Reversed and remanded.

        Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

        Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Eric A. Swenson, Supervising

Deputy Attorney General, Michael D. Butera, Deputy Attorney General, for Plaintiff and Respondent.

———————————

Defendant and appellant Christopher DeHuff appeals from the trial court's postjudgment order denying his petition for resentencing pursuant to Penal Code section 1170.95[1] and Senate Bill No. 1437 (Senate Bill 1437). Section 1170.95 provides for vacatur of a murder conviction obtained under either the natural and probable consequences doctrine or, under certain circumstances, the felony murder theory of liability. (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

DeHuff contends the trial court erred by denying his petition at the second stage of section 1170.95 subdivision (c) analysis when the court ruled that, although the jury was presented with two theories of liability—one valid (implied malice) and the other invalid (second degree felony murder)—substantial evidence supported a jury finding that DeHuff committed the killing with malice aforethought, and he was therefore ineligible for relief as a matter of law.

We reverse and remand to the trial court for further proceedings.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

# FACTS AND PROCEDURAL HISTORY[2]

### *The Offenses*

"On October 13, 1997, Daniel Sylvers's white 1991 Dodge Caravan was stolen from Foothill Boulevard in Los Angeles. Sylvers reported the theft to police.

"On October 14, 1997, at about 9:30 p.m., Los Angeles Police Officers Douglas Gerst and Ron Stringer were on patrol on their motorcycles when they saw a white van driven by appellant straddling lane lines as it traveled west on Van Nuys Boulevard. The van swerved to the left, into oncoming traffic, then back to the right. The van then drove through a red light at about 60 miles per hour. The driver of a vehicle at that intersection braked sharply to avoid a collision, coming within one or two car lengths of the van.

"When Officers Gerst and Stringer caught up with the van, they activated their red lights. Appellant slowed down to about 25 miles per hour, but did not stop. The officers activated their sirens, but appellant still did not stop. Appellant then turned the van into a residential area, accelerated and swerved toward two oncoming cars, causing the cars to drive off the road. Appellant drove through a stop sign and a red light and missed colliding with a car by inches.

---

[2] We take judicial notice of this court's prior unpublished opinion in *People v. DeHuff* (Oct. 14, 1999, B126967) (*DeHuff*), from which the facts are drawn.

"After a sharp turn on Lassen, appellant accelerated to about 70 miles per hour. The van's headlights were not on. At the intersection of Lassen and Sepulveda, appellant ran a red light and collided with a van driven by Linda Wageman. The van hit the center divider, flew four to five feet in the air, landed on its left side, slid[] to the curb and began burning. Officers Gerst and Stringer were able to remove a passenger, Rebecca Wageman, from the van. Fire prevented the officers from removing Linda Wageman from the van. She died. Rebecca suffered a concussion, a fractured rib, and second and third degree burns.

"Subsequent investigation of the accident scene determined that appellant was travelling at about 77 miles per hour at the time of the collision.

"Appellant was not a licensed driver." (*DeHuff*, *supra*, B126967.)

### The Trial

At trial, the jury was instructed on two theories of murder: (1) second degree implied malice murder; and (2) second degree felony murder based upon the offense of evading an officer while driving with willful and wanton disregard for the safety of persons or property (§ 2800.2, subd. (a)).

The jury found DeHuff guilty of second degree murder (§ 187, subd. (a) [count 1]), evading an officer while operating a motor vehicle with willful disregard (§ 2800.2, subd. (a)

[count 3]), unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a) [count 4]), receiving stolen property (§ 496, subd. (a) [count 5]), and misdemeanor unlicensed driver (Veh. Code, § 12500, subd. (a) [count 7]).[3] As to counts 3 and 4, the jury found true the allegations that DeHuff personally inflicted great bodily injury upon Rebecca Wageman in the commission of the crimes (§ 12022.7, subd. (a)).

The trial court sentenced DeHuff to 15 years to life in count 1, plus a consecutive determinate term of 3 years in count 4 (the high term), plus 3 years for the infliction of great bodily injury enhancement in count 4. Counts 3 and 5 were stayed pursuant to section 654. DeHuff was sentenced to six months for the misdemeanor in count 7.

***The Appeal***

On appeal, DeHuff argued that (1) the trial court erroneously limited the order in which the jury could consider the charges against him, and (2) his conviction for second degree felony murder violated his constitutional rights to due process of law because that crime was not defined by statute. (*DeHuff, supra*, B126967.) The People argued that the trial court failed to impose certain mandatory fines and assessments. (*Ibid.*) Another panel of this court imposed a parole revocation fine of $10,000 pursuant to section 1202.45, but otherwise affirmed the judgment. (*Ibid.*)

_____

[3] Counts 2 and 6 were dismissed.

### *Motion to Recall the Remittitur*

On March 10, 2005, DeHuff filed a motion to recall remittitur with the Court of Appeal, based on the Supreme Court's decision in *People v. Howard* (2005) 34 Cal.4th 1129 (*Howard*). *Howard* held that "a violation of section 2800.2 is not, in the abstract, inherently dangerous to human life. Therefore, the second degree felony-murder rule does not apply when a killing occurs during a violation of section 2800.2." (*Id.* at pp. 1138–1139.) DeHuff argued that *Howard* should apply retroactively in his case. The Court of Appeal denied the motion.

### *Petition for Resentencing, Opposition & Reply*

On January 10, 2019, DeHuff filed a petition for vacatur of the murder conviction and resentencing under section 1170.95. He utilized a standardized form, and indicated that he was convicted of second degree murder under the natural and probable consequences doctrine or the second degree felony murder doctrine and could not now be convicted of murder due to the changes to section 188, effective January 1, 2019. He requested that counsel be appointed to him.

The People filed a response on October 15, 2019, contending that DeHuff was ineligible for relief because the record of conviction supported the conclusion that he had been convicted for second degree murder with malice

aforethought and could still be convicted of second degree murder despite the changes to section 188.  The People additionally filed a response arguing that section 1170.95 was unconstitutional.

Defense counsel filed a reply on November 18, 2019.  The reply argued that the prosecution's interpretation of implied malice was so broad as to render section 1170.95 meaningless, and asserted that the People sought to avoid an evidentiary hearing where the burden of proof would fall to them.  The reply argued that, at the stage of the proceedings then pending before the trial court, the question was whether DeHuff had made a prima facie showing of eligibility.  If an inquiry into the facts was necessary to resolve DeHuff's eligibility, the trial court was obligated to issue an order to show cause and hold an evidentiary hearing.  The reply also argued that section 1170.95 was constitutional.

### *Hearing and Supplemental Briefing*

At a hearing on December 16, 2019, the trial court ruled that section 1170.95 was constitutional, and permitted further argument on the issue of eligibility.

The prosecution argued that there was "ample evidence in the record of conviction to support a conclusion that a reasonable jury *could* find beyond a reasonable doubt that the defendant acted with implied malice."  (Italics added.)

Defense counsel responded that this proposed analysis would "gut" Senate Bill 1437 because the People could claim implied malice was an available theory of relief in almost any murder case. At trial in DeHuff's case, the jury was instructed on implied malice, but the prosecutor told the jury it could ignore implied malice and convict on the second degree felony murder theory. Any comparison of what the jury would have done with respect to each theory required an evidentiary hearing. Defense counsel suggested that in this case he might call an accident reconstructionist. Counsel asserted that "the burden that the People have that they need to prove to the court is beyond a reasonable doubt, so the court will be sitting as the finder of fact for a fact which was not presented to the jury originally."

The trial court stated that, in the absence of guidance from the courts of appeal, in its view the procedure required the court to first look at the record to determine whether it could reach a conclusion on the facts already presented. If the evidence was not sufficient, the parties could present new evidence. The court believed it would be appropriate to issue an order to show cause so that the parties could point to specific portions of the record in support of their respective positions, and then "take it potentially a step further after that."

The prosecution disagreed, arguing that, at this stage, the trial court had to determine whether DeHuff had made a prima facie showing of eligibility on the basis of the record of

conviction, and that an order to show cause should only be issued if additional evidence was needed.

Defense counsel reiterated that an order to show cause should issue whenever there were factual issues to be determined, whether or not new evidence was needed.

The court decided to conduct further research on the issue to determine whether it was necessary to issue an order to show cause, and invited the parties to submit further briefing.

On January 16, 2020, the People filed a supplemental opposition. Relying on *People v. Lewis* (2020) 43 Cal.App.5th 1128 (*Lewis*), review granted March 18, 2020, S260598, the People argued that the court could rely on the record of conviction to make a prima facie determination without holding an evidentiary hearing. The People asserted that the trial court's role was to determine whether the record of conviction contained sufficient evidence that DeHuff acted with conscious disregard for life.

### *Trial Court's Ruling*

On February 7, 2020, the court issued its written decision, denying DeHuff's petition for resentencing. The court ruled that Senate Bill 1437 was constitutional, but that DeHuff failed to make a prima facie showing and was not eligible for relief as a matter of law. The court stated that the question before it was whether DeHuff satisfied the condition that he "could not be convicted of first or second

9

degree murder because of changes to Section 188 or 189 made effective January 1, 2019." The court cited to evidence of DeHuff's conduct in the record, and concluded that "there was much more than sufficient evidence to establish that Defendant acted with conscious disregard for human life and that he could be found liable for murder under an implied malice theory."

DeHuff timely appealed.

## DISCUSSION

### *Section 1170.95*

"Through section 1170.95, Senate Bill 1437 created a petitioning process by which a defendant convicted of murder under a felony murder theory of liability could petition to have his conviction vacated and be resentenced." (*People v. Smith* (2020) 49 Cal.App.5th 85, 92 (*Smith*), review granted July 22, 2020, S262835.) We remain in agreement with the majority of the courts of appeal as to the procedure set forth in the statute, which requires that a petitioner make two separate prima facie showings under section 1170.95, subdivision (c).[4] (See *People v. Harris*

---

[4] The First District of the Court of Appeal, Division One, disagrees, and has held that a petitioner is entitled to counsel upon filing a facially sufficient petition for relief, and that subdivision (c) contemplates a single prima facie review

(2021) 60 Cal.App.5th 939, 951, fn. 8 [listing cases favoring this view].)

In the first stage under subdivision (c), "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." Specifically, the court determines whether the petitioner has made a prima facie showing that he has met the requirements set forth in subdivision (a), including that "'(1) [a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[,] [¶] (2) [t]he petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[, and] [¶] (3) [t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (See § 1170.95, subd. (c); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327, review granted Mar. 18, 2020, [S260493 (*Verdugo*)].)" (*Smith*, *supra*, 49 Cal.App.5th at p. 92.) "If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may deny the petition. (*Verdugo*, [*supra*,] at p. 330.) If, however, a determination of eligibility requires an assessment of the evidence concerning

of the petition. (*People v. Cooper* (2020) 54 Cal.App.5th 106, review granted Nov. 10, 2020, S264684.)

11

the commission of the petitioner's offense, the trial court must appoint counsel and [order briefing].  (*Verdugo*, [*supra*,] at p. 332; *Lewis, supra*, 43 Cal.App.5th at p. 1140.)"  (*Smith*, *supra*, at p. 92, fn. omitted.)

In the second stage proscribed under section 1170.95, subdivision (c), the petitioner must make "a prima facie showing that he or she is entitled to relief."  (§ 1170.95, subd. (c); *People v. York* (2020) 54 Cal.App.5th 250, 262–263, review granted Nov. 18, 2020, S264954.)

"'If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'  [¶]  Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).)  If the prosecutor does not stipulate to vacating the conviction and resentencing the petitioner (§ 1170.95, subd. (d)(2)), the People have the opportunity to present new and additional evidence at the hearing to demonstrate the petitioner is not entitled to resentencing. (§ 1170.95, subd. (d)(3).)  The petitioner also has the opportunity to present new or additional evidence in support of the resentencing request.  (*Ibid*.)"  (*Verdugo, supra*, 44 Cal.App.5th at p. 327.)

*Analysis*

This appeal presents the question of what a stage two analysis under section 1170.95, subdivision (c)—whether petitioner has made a prima facie showing that he or she is entitled to relief—entails. While the parties agree that the trial court erred in finding that DeHuff failed to make a prima facie showing of entitlement, they disagree as to how the trial court is to make such an evaluation, and as to the result that we should reach in DeHuff's case as a consequence.

DeHuff argues that he is entitled to resentencing, because the jury was presented with alternative legal theories of liability for murder—one valid (implied malice murder), and one invalid (second degree felony murder). He reasons that, because there is no special verdict reflecting which theory the jury based its finding of guilt upon, and the jury was not instructed that it must unanimously agree regarding the theory of liability for murder, there is no way to ascertain whether the jury relied on the invalid theory of second degree felony murder based on his violation of section 2800.2, subdivision (a). DeHuff contends that the standard for evaluating "alternative theory error" of this sort is that the error must be harmless beyond a reasonable doubt as articulated in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). He asserts that application of the *Chapman* standard in this case "must necessarily lead to the granting of relief . . . this Court's [*sic*] should order the trial court do

13

so without further hearing." Alternatively, DeHuff urges us to vacate his second degree murder conviction and remand to the trial court, giving the prosecution the option to either retry him on the charge of murder under the valid implied malice theory, or accept a conviction for evading an officer in violation of section 2800.2, subdivision (a).

The People agree that DeHuff has made a prima facie showing that he is entitled to relief under stage two of the section 1170.95, subdivision (c) inquiry, but argue that the appropriate remedy is remand to the trial court with directions to issue an order to show cause and hold a hearing at which the burden is on the People to prove that DeHuff is ineligible for relief beyond a reasonable doubt. (§ 1170.95, subd. (d)(3).) The People contend that at the entitlement stage of the inquiry under section 1170.95, subdivision (c), the trial court may only deny the petitioner relief if he is ineligible as a matter of law, and that the trial court erred in reviewing the record for substantial evidence that DeHuff could still be convicted under a valid theory of murder. We agree with the People.

We begin by rejecting DeHuff's contention that the trial court must evaluate his murder conviction as the court of appeal would evaluate alternative legal theory error, and find that he is entitled to resentencing unless the error is harmless beyond a reasonable doubt. DeHuff misapprehends the procedures set forth in section 1170.95. This is not a direct appeal. Under section 1170.95, DeHuff is entitled to resentencing only if he is able to make prima facie

showing that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).) The statute does not permit a petitioner to establish eligibility on the basis of alleged trial error.[5] (§ 1170.95, subd. (a).) As we will discuss, DeHuff has made a prima facie showing of entitlement because he could no longer be prosecuted under a second degree felony murder theory, not because the jury was improperly instructed at trial.[6]

---

[5] In the response, the People cite our decisions in *Smith*, *supra*, 49 Cal.App.5th 85, and *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178–1180, review granted June 24, 2020, S262011, as holding that a petitioner may base a claim for 1170.95 relief on a challenge to a special circumstance finding made prior to *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. Such holdings might undermine the position that an 1170.95 petition is not a means to attack a murder conviction on a basis other than the amendments to sections 188 and 189. However, this is an inaccurate characterization of our holdings in those cases. Neither *Smith* nor *Torres* holds that a petitioner may challenge a special circumstance true finding in a section 1170.95 petition. Both cases hold that the trial court may not rule that a petitioner is ineligible for relief *as a matter of law* on the basis of a pre-*Banks/Clark* special circumstance finding at the first stage of the analysis under section 1170.95, subdivision (c), which takes place prior to briefing.

[6] It is doubtful that DeHuff's jury was, in fact, improperly instructed. Following the issuance of *Howard*, *supra*, 34 Cal.4th 1129, another panel of this court stated in

15

With respect to how the trial court should determine whether a petitioner has made a prima facie showing of entitlement under section 1170.95, subdivision (c), there is disagreement between the courts of appeal. In *People v. Drayton* (2020) 47 Cal.App.5th 965, at pages 980 through 981 (*Drayton*), the Sixth District of the Court of Appeal described the procedure as comporting with that of a habeas corpus proceeding: "[W]hen assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true. [Citation.] The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section

its order denying DeHuff's motion to recall the remittitur: "We question whether *Howard* has any application to appellant's case. The Supreme Court's decision in *Howard* was based on a 1998 amendment to section 2800.2, which broadened the scope of that section. The Court held that the broadened version of section 2800.2 was not an inherently dangerous felony because it could be violated in the abstract without endangering human life. Even assuming that *Howard* should be applied retroactively, it could only be so applied to crimes committed after the effective date of the amendment. Appellant committed his violation of section 2800.2 in 1997, before the amendment was passed, and was tried in 1998, before the amendment's effective date of January 1, 1999. (Veh. Code, § 2800.2; Stats.1998, c. 472 (A.B.2066); Cal. Const., Art. IV, § 8.)"

16

1170.95 as eligible for resentencing. Just as in habeas corpus, if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.] However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime). [¶] If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95(a), then the trial court should issue an order to show cause. (§ 1170.95(c).)"

The majority of the courts of appeal to consider the question have agreed with *Drayton*. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 898, review granted Aug. 12, 2020, S263219; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165–1166; *People v. Perez* (2020) 54 Cal.App.5th 896, 903–904, review granted Dec. 9, 2020, S265254; *People v. Duchine* (2021) 60 Cal.App.5th 798, 813 (*Duchine*); *People v. Harris* (2021) 60 Cal.App.5th 939, 958; *People v. Rivera* (2021) 62 Cal.App.5th 217; *People v. Secrease* (Apr. 19, 2021, A158342) ___ Cal.App.5th ___ [2021 WL 1538008].)

*People v. Garcia* (2020) 57 Cal.App.5th 100, review granted February 10, 2020, S265692 (*Garcia*) expresses a

17

contrary, minority view. In *Garcia*, the Court of Appeal, Second Appellate District, Division Six took the same position as the trial court in the present case, and held that, when determining entitlement in stage two, the trial court should determine whether substantial evidence supports the conclusion that the petitioner *could* still be convicted of murder following the amendments to sections 188 and 189. The *Garcia* court explained: "Section 1170.95 clearly and unambiguously requires a prima facie showing that the petitioner '*could not* be convicted of . . . second degree murder because of changes to Section 188 . . . .' (*Id.*, subd. (a)(3), italics added.) 'Could' is 'used . . . as an alternative to *can* suggesting less force or certainty.' (Webster's 3d New Internat. Dict. (1981) p. 517.) In view of the evidence that appellant directed [his co-defendant] to 'stick' the victim with a knife, as a matter of law appellant could be convicted of second degree murder as a direct aider and abettor despite the changes to section 188." (*Garcia*, *supra*, at p. 114.) The court continued, "It is also possible that the jury believed appellant made this statement but intended only to wound [the victim], not kill him. But we should not speculate what the jury might have believed. The jury neither expressly nor impliedly found that appellant did not harbor the specific intent to kill when he allegedly told [his codefendant] to stab [the victim]. In the absence of such a finding, appellant could be convicted of murder as a direct aider and abettor because a reasonable trier of fact could find beyond a reasonable doubt that he said, 'Stick him. Stick him,' and

18

that he intended to kill [the victim] when he made this statement." (*Id.* at pp. 114–115.) In the *Garcia* court's view, it was not necessary to "resort . . . to a 'weighing of facts and evidence' to reach this conclusion. If the jury had been instructed on direct aiding and abetting and had based its murder conviction on this theory, the conviction would have been upheld on appeal because it would have been supported by substantial evidence. [Citation.] . . . No weighing of the evidence is involved in applying the substantial evidence test." (*Id.* at p. 115.) The *Garcia* court concluded, "There is a gatekeeping function to be performed here. . . . [¶] The gate in the instant matter should remain closed. The ameliorative statute was not designed to benefit a gang member who participated in a brutal gang assault upon a helpless victim 'green-lighted' by the gang and who, according to the trial testimony of percipient witnesses, directed the actual killer to stab the victim." (*Id.* at p. 117.)

It is tempting in cases where the trial record includes extensive inculpatory evidence supporting the convictions for horrific crimes to agree with the procedure sanctioned in *Garcia*, and we have empathy for the trial courts that anticipate an evidentiary hearing will have little chance of leading to a different result. However, we must honor the Legislature's words and intent. In doing so, we conclude that *Drayton* expresses the better view of the statutory process and requirements.[7]

---

[7] The People state that this court authored *People v. Duke* (2020) 55 Cal.App.5th 113 (*Duke*), a case upon which

19

Recently, the Court of Appeal, First District, Division Two, discussed the differences between *Drayton* and *Garcia* in depth, in *Duchine, supra,* 60 Cal.App.5th at page 813, footnote omitted: "*Drayton* ascribes a meaning to the third element of section 1170.95, subdivision (a) different from that espoused in *Garcia.* If a defendant asserts he lacked the requisite intent or did not act in a manner that would make him liable under still-valid murder theories, unless the record of conviction refutes those assertions *as a matter of law*, the defendant has met his prima facie burden. (*Drayton, supra,* 47 Cal.App.5th at p. 980.) In that circumstance, the trial court should take him at his word and not engage in factfinding on the issues 'without first issuing an order to show cause and allowing the parties to present evidence at a hearing.' (*Id.* at pp. 981–982 [where petitioner denied he was a major participant in the felony or acted with reckless indifference to human life and record did not conclusively refute these assertions, trial court should not have decided these factual issues without issuing order to show cause and allowing parties to present evidence at hearing].) Implicit in *Drayton*'s holding is that the third element of section 1170.95, subdivision (a) does not require an absence of sufficient evidence, *on the record of conviction*, to support a hypothetical finding that the defendant is guilty of murder under a currently valid theory."

*Garcia* heavily relied for its reasoning. In fact, *Duke* was authored by Division One of the Second District of the Court Appeal.

20

The *Duchine* court concluded: "In view of the ameliorative purposes of Senate Bill 1437, the Legislature's stated concerns about proportionality, fairness and excessive punishment, and its adoption of a trial court proceeding at which new evidence may be submitted and a criminal trial burden of proof beyond a reasonable doubt is applied, we cannot agree with cases like *Garcia* that interpret section 1170.95 to allow the trial court at the prima facie stage to resolve disputed facts or to answer only the question whether the existing record precludes a conviction on a murder theory that was never tried. By allowing new evidence and providing for an evidentiary hearing, the Legislature plainly intended that the issues concerning whether the defendant was guilty under theories of murder not previously or necessarily decided would be resolved anew, through a factfinding process affording a degree of due process to the petitioner.

"The standard adopted by *Garcia*, in which the trial court focuses on the state of the existing record and applies an appellate review substantial evidence standard, makes little sense in this context. If it had intended the process to be substantial evidence review of the existing record, the Legislature could simply have provided an appellate remedy, such as direct appeal for nonfinal convictions and habeas corpus for final convictions. This is not what it did. Instead, the Legislature imposed the burden of proof on the prosecution, at the resentencing hearing. The interpretation adopted by *Garcia* would mean the prosecution's burden

would be to prove 'beyond a reasonable doubt' that 'substantial evidence' exists, which by itself borders on incomprehensible.  The court would then employ these two widely divergent standards in a combined (and backwards) fashion to determine, as *Garcia* suggests, whether a jury *hypothetically could have found* a defendant guilty under a permissible theory had it addressed the issue.  In short, the idea that the prosecution must prove beyond a reasonable doubt that there is substantial evidence in a prior record to support a hypothetical finding of guilt on a theory of murder that may never have been presented to a jury is beyond that border."  (*Duchine*, *supra*, 60 Cal.App.5th at pp. 813–814, fn. omitted.)

We agree with *Duchine* and its reasoning.  In this case, DeHuff was prosecuted on two theories of liability—implied malice and second degree felony murder based on evading an officer by driving with reckless disregard for the safety of persons or property (§ 2800.2, subd. (a))—and there is no way to ascertain from the record upon which theory the jury based its finding of guilt.  Following the amendments to section 188, the statute now provides:  "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  The offense of evading an officer while driving with reckless disregard for the safety of persons or property (§ 2800.2, subd. (a)), is not among the enumerated crimes in

22

section 189, subdivision (a) that may still serve as a basis for a felony murder conviction under certain circumstances.[8] Thus, DeHuff could not be convicted of second degree felony murder based on a violation of section 2800.2, subdivision (a) as a result of these amendments.

There is substantial evidence in the record to support a finding that DeHuff committed second degree murder on an

_____

[8] Section 189, subdivision (a) provides: "All murder that is perpetrated by means of a destructive device or explosive, a weapon of mass destruction, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or that is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 287, 288, or 289, or former Section 288a, or murder that is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree." Section 189, subdivision (e) limits such liability to certain circumstances: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

implied malice theory, but that is not sufficient to preclude DeHuff from relief as a matter of law.  We therefore reverse and remand to the trial court to issue an order to show cause and hold a hearing at which the prosecution has the burden of establishing that DeHuff is ineligible for relief beyond a reasonable doubt.  (§ 1170.95, subd. (d)(3).)

## DISPOSITION

We reverse the trial court's order denying the petition and remand with directions to issue an order to show cause under section 1170.95, subdivision (c) and hold a hearing pursuant to section 1170.95, subdivision (d) to determine whether to vacate DeHuff's murder conviction and recall his sentence and resentence him.


MOOR, J.

We concur:


RUBIN, P. J.


KIM, J.

24